**UNITED STATES DISTRICT COURT**
**DISTRICT OF ARIZONA**

James Lee Price, Jr.,
Petitioner
-vs-
Charles L. Ryan, et al.,
Respondents.

CV-14-8219-PCT-JJT (JFM)

**Report & Recommendation**
**on Petition for Writ of Habeas Corpus**

## I. MATTER UNDER CONSIDERATION

Petitioner, presently incarcerated in the Arizona State Prison Complex at Kingman, Arizona, filed a Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 on November 7, 2014 (Doc. 1).   On January 20, 2015 Respondents filed their Answer (Doc. 9).   Petitioner filed a Reply on January 30, 2015 (Doc. 10).   Respondents filed a Supplemental Answer on July 23, 2015 (Doc. 25), and Petitioner filed a Supplemental Reply on August 18, 2015 (Doc. 26).

The Petitioner's Petition is now ripe for consideration.   Accordingly, the undersigned makes the following proposed findings of fact, report, and recommendation pursuant to Rule 8(b), Rules Governing Section 2254 Cases, Rule 72(b), Federal Rules of Civil Procedure, 28 U.S.C. § 636(b) and Rule 72.2(a)(2), Local Rules of Civil Procedure.

## II. RELEVANT FACTUAL & PROCEDURAL BACKGROUND
### A. FACTUAL BACKGROUND

In disposing of Petitioner's direct appeal, the Arizona Court of Appeals summarized the factual background as follows:

Police officers arrived at Price's home to execute a search

1

warrant as Price was getting into a truck. Officers patted Price down and found a clear glass pipe, two plastic bags containing methamphetamine, a large bundle of clear plastic bags, an electronic scale with white residue, pay-owe slips, and a large amount of cash.

Detective Direen read Miranda warnings to Price and interviewed him at the scene for about 45 minutes. During the interview, which was recorded, [the case agent] asked Price where he was going. Price responded that he was leaving "[t]o get rid of" the methamphetamine and drug paraphernalia. Price admitted he had been selling methamphetamine for a little less than one year. He also stated he would buy roughly one ounce of methamphetamine every one to two weeks. He would personally use about one-quarter of the drug and sell the remainder to friends so "it wouldn't really cost a whole lot to use."

(Exhibit R, Mem. Dec. at 2.)  (Exhibits to the Answer, Doc. 9, are referenced herein as "Exhibit ____.")

In the course of the investigation, an interview of Petitioner was recorded, including the following exchange:

[Q. ] I understand you've been selling methamphetamine for quite a while…how long?
[A.] I don't know. It's got to be a year.

(*Id.* at 5.)

**B. PROCEEDINGS AT TRIAL**

On July 17, 2009, Petitioner was indicted in Yavapai County Superior Court on charges of possession of dangerous drugs for sale and possession of drug paraphernalia. (Exhibit B, Indictment; Exhibit R, Mem. Dec. at 2-3.)

**Plea Offers** – The prosecution made an initial plea offer which provided for a five year prison term.   Petitioner rejected the offer and then retained new trial counsel. (Kelly Declaration, Doc. 21, Attachment A at 3.)  Subsequently, in conformance with   a policy that required escalating plea offers, the prosecution made a plea offer that stipulated to "no less than 7.5 years in prison," which was withdrawn at a pretrial conference on September 21, 2009.  (Exhibit D, M.E. 9/21/09; Answer, Doc. 9 at 5.[1])

---

[1] "The allegations of a return to the writ of habeas corpus or of an answer to an order to show cause in a habeas corpus proceeding, if not traversed, shall be accepted as true except to the extent that the judge finds from the evidence that they are not true." 28 U.S.C. § 2248.

Another plea offer for "no less than 8 years" was made, which was withdrawn at the pretrial conference on May 3, 2010. (Exhibit E, M.E. 5/3/10.)

**Voluntariness Hearing** – On July 2, 2010, Petitioner appeared for a voluntariness hearing at which the state argued for the admission of the recorded interview of Petitioner conducted at the time of arrest.  At the end of the hearing, the court took the matter under advisement.  (Exhibit G, R.T. 8/3/10.) Ultimately, at trial, the parties stipulated to admission of the interview.  (Exhibit J, R.T. 8/27/10 at 4.) (*See id.* at 17, identifying Exhibit 64 as the interview.)

**Motion in Limine** - Petitioner complains herein about the treatment of certain evidence of prior bad acts.   The Arizona Court of Appeals summarized the factual background as follows:

> Prior to trial, Price moved to compel the State "to disclose any proposed prior bad act evidence" it intended to offer at trial. The State did not file a written response. When defense counsel raised the issue again at trial, the State explained that it did not respond because it did not intend to use any evidence that could be characterized as other act evidence.
> At trial, Price admitted possessing the methamphetamine and drug paraphernalia. He argued, though, that he had never sold methamphetamine and that he did not possess the methamphetamine for purposes of sale.
> During Detective Direen's testimony, the State played three excerpts from Price's interview. At some point during the first clip, Price requested a bench conference. He argued that certain statements in the excerpt were inadmissible prior act evidence. The State countered that the statements were admissions. The trial court first stated that Price's confession to selling methamphetamine in the past was "an admission" and "not a specific act." It later determined that the statement was admissible to prove knowledge, absence of mistake, and intent.

(Exhibit R, Mem. Dec. at 3.)   The motion in limine by defense counsel was filed July 2, 2010. (*See* Exhibit F, Motion in Compel/Preclude Prior Acts.)  The defense's motion was not addressed by the trial court until trial, on August 27, 2010, during the testimony of the investigating officer.  (Exhibit J, R.T. 8/27/10 at 17 *et seq.*)

**Renewed Plea Offer** - Just before trial, defense counsel made a motion pursuant to Arizona Rule of Criminal Procedure 15.8. (Exhibit H.) That rule requires that any plea offer must be accompanied by certain disclosures, requires that the offer remain

available for 30 days after the disclosure, and if the disclosures are not made and they would have impacted the defendant's decision on the plea offer, the trial court may preclude the prosecution from admitting the evidence which was not previously disclosed.   In response, the prosecution reopened the plea offer, stipulating to the possibility of a sentence as low as 7.5 years, flat time.  (Exhibit I, R.T. 8/25/10 at 3-5.)

The court observed that the reopening of the offer took the matter outside of Rule 15.8, and offered a recess to allow Petitioner to consider the renewed offer.  (*Id.* at 5.) Trial counsel responded:

> MR. KELLY [trial counsel]: Judge, if I may address that last issue, first of all, I do appreciate [the prosecutor] reopening of the offer. I know that you were recently assigned as the trial judge in this case, replacing Judge Lindberg. Judge Lindberg conducted an extensive Rule 17.4 conference evaluating the risk of going to trial versus the benefit under any plea agreement; in fact, I believe we've conducted a couple of those. This case has been pending for quite some time. I've had several opportunities to discuss the same risk of going to trial versus the benefit under the offer identified by [the prosecutor] with my client. He is an educated, intelligent man; I believe he fully understands it.
>
> And as we sit here today, I've had a chance to visit with him, and he flatly rejects the plea offer, so I don't know what else we need to do for the record, but I don't want to waste the Court's time.
>
> THE COURT: All right.
>
> Mr. Price, just let me make sure, before we call the jury up, then, that you understand that if this matter goes to trial and the State shows that you were on probation, and you are convicted of the class 2 felony, that the Court will have no legal option but to sentence you to at least ten years in prison, flat time.
>
> You understand that?
>
> THE DEFENDANT: I understand.
>
> THE COURT: All right. And that this offer allows you to receive less than that, which would be seven and a half, possibly, as a flat-time sentence.
>
> You understand that as well?
>
> THE DEFENDANT: I understand, Your Honor.
>
> THE COURT: And it is your decision to go to trial at this time?
>
> THE DEFENDANT: Yes, Your Honor.
>
> THE COURT: All right.

(Exhibit I, R.T. 8/25/10 at 5-6.)

Petitioner was eventually convicted as charged.  (Exhibit R, Mem. Dec. at 4; Exhibit L, M.E. 9/1/10 at 2.)

Petitioner was sentenced to concurrent terms, the longest of which was 11 years.

(Exhibit M, R.T. 9/28/10 at 11.)

## C.  PROCEEDINGS ON DIRECT APPEAL

Petitioner filed a direct appeal, arguing on state law grounds that the trial court improperly admitted the prior act evidence that was prejudicial and deprived him of a fair trial.  (Exhibit P, Opening Brief.)  The Arizona Court of Appeals found the evidence properly admissible, and affirmed Petitioner conviction.  (Exhibit R. Mem. Dec. at 8.)

Petitioner filed a Motion for Reconsideration (Doc. 2), which was summarily denied.  (Exhibit T, Order 1/20/12.)

Petitioner then filed a Petition for Review by the Arizona Supreme Court (Exhibit U), which was summarily denied on May 30, 2012.  (Exhibit V, Order 5/30/12.)

## D.  PROCEEDINGS ON POST-CONVICTION RELIEF

On June 28, 2012, Petitioner filed through counsel a Notice of Post Conviction Relief (Exhibit X), and eventually filed a PCR Petition (Exhibit Y).  Petitioner argued the unconstitutional suppression of evidence, ineffective assistance of trial counsel in relation to the suppressed evidence, and sentencing error in the calculation of pre-sentence incarceration credits.

The PCR court rejected the ineffective assistance claim on the merits. The court did not directly and expressly address the *Brady* claim beyond concluding in the analysis of the related ineffectiveness claim that it "cannot find that the evidence would have changed the outcome of the trial."  (Exhibit AA, Order 2/8/13 at 1.)  The court granted relief with regard to the presentence incarceration credit, and amended the judgment and sentence.  (*Id.* at 2.)

Petitioner moved for a rehearing, arguing *inter alia*  that the *Brady* claim had not been addressed.  (Exhibit BB.)  That motion was summarily denied.  (Exhibit CC, Order 3/4/13.)

Petitioner filed a Petition for Review (Exhibit DD), arguing the *Brady* and

5

ineffective assistance claims.   In an unpublished decision issued June 16, 2014, the Arizona Court of Appeals granted review, but denied relief.   (Exhibit GG, Decision 6/16/14.)

Petitioner did not seek further review.  (Exhibit HH, Mandate.)

## E.  PRESENT FEDERAL HABEAS PROCEEDINGS

**Petition** - Petitioner commenced the current case by filing his Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 on November 7, 2014.   (Doc.1). Petitioner's Petition asserts the following four grounds for relief:

> 1.   "The state trial court erred in permitting the admission of other acts evidence," in violation of Petitioner's Fourteenth Amendment right to due process, his Fifth Amendment right under the Compulsory Process Clause, and the right against self-incrimination;
> 2.   "The State violated the 'Brady' rule by withholding information concerning unprofessional conduct by the case agent[,] depriving [Petitioner] of a fair trial and the ability to effectively confront and cross-examine," in violation of Petitioner's Fourteenth Amendment right to due process and his Sixth Amendment right under the Confrontation Clause;
> 3.   "Trial counsel was ineffective in failing to secure through a public records request, or otherwise, the information concerning unprofessional conduct by the case agent," in violation of Plaintiff's Fifth, Sixth, and Fourteenth Amendment rights; and
> 4.   "Counsel was ineffective by failing to dispen[s]e proper legal advice with respect to the plea offer from the State[,] in violation of the 6th Amendment, prejudicing [Petitioner] with a substantially longer prison sentence than what the plea provided for."

(Order 12/8/14, Doc. 4 at 1-2 (quoting Petition, Doc. 1).)

**Response** - On January 20, 2015, Respondents filed their Response ("Answer") (Doc. 9).  Respondents argue Petitioner has procedurally defaulted on his state remedies on Grounds 1, 2 and 4, and Grounds 1, 2, and 3 are without merit.

**Reply** - On January 30, 2015, Petitioner filed a Reply (Doc. 10).   Petitioner argues that under *Martinez v. Ryan*, 132 S. Ct. 1315 (2012) he is not required to exhaust his state remedies of his ineffective assistance claim, because PCR counsel was ineffective in failing to present the claim.   Petitioner argues he is entitled to an evidentiary hearing and *de novo* review on Ground 4.  Petitioner presents his affidavit in

support of his claim.

Petitioner does not address Grounds 1, 2, or 3.

**Supplements** – On March 31, 2015, the Court observed the need to address the substance of Ground 4 for purposes of resolving the *Martinez* issue, and the absence of a record on counsel's advice with regard to the relative risks and benefits of trial and the proffered plea.  The Court directed the parties to supplement the record and their briefs to address those issues.  (Order 3/31/15, Doc. 11.)  Plaintiff subsequently waived his attorney-client privilege for purposes of this proceeding.  (Doc. 12.)

On June 22, 2015, Respondents filed declarations from trial and PCR Counsel (Doc. 21).  On July 23, 2015, Respondents filed a Supplemental Answer (Doc. 25), arguing on the basis of the declarations of counsel and the balance of the record that Petitioner's claims of ineffectiveness in Ground 4 and the associated claim of ineffective assistance of PCR counsel are without merit.

On August 18, 2015, Petitioner filed his Supplemental Reply (Doc. 26), arguing that the records shows trial counsel misrepresented the admissibility of Petitioner's tape recorded interview, and the trial court's ruling was not available until after the plea was no longer available.


### III. APPLICATION OF LAW TO FACTS

**A.  EXHAUSTION & PROCEDURAL DEFAULT**

Respondents argue that Petitioner's state remedies on Grounds 1, 2, and 4 were not properly exhausted and are now procedurally defaulted, and thus are barred from federal habeas review.


**1. Exhaustion Requirement**

Generally, a federal court has authority to review a state prisoner's claims only if available state remedies have been exhausted.  *Duckworth v. Serrano*, 454 U.S. 1, 3 (1981) (*per curiam*).  The exhaustion doctrine, first developed in case law, has been

codified at 28 U.S.C. § 2254(b) and (c).  When seeking habeas relief, the burden is on the petitioner to show that he has properly exhausted each claim.  *Cartwright v. Cupp*, 650 F.2d 1103, 1104 (9th Cir. 1981)(*per curiam*), *cert. denied*, 455 U.S. 1023 (1982).

Ordinarily, "to exhaust one's state court remedies in Arizona, a petitioner must first raise the claim in a direct appeal or collaterally attack his conviction in a petition for post-conviction relief pursuant to Rule 32."  *Roettgen v. Copeland*,  33 F.3d 36, 38 (9th Cir. 1994).   Only one of these avenues of relief must be exhausted before bringing a habeas petition in federal court.  This is true even where alternative avenues of reviewing constitutional issues are still available in state court.  *Brown v. Easter*, 68 F.3d 1209, 1211 (9th Cir. 1995); *Turner v. Compoy*, 827 F.2d 526, 528 (9th Cir. 1987), *cert. denied*, 489 U.S. 1059 (1989).  "In cases not carrying a life sentence or the death penalty, 'claims of Arizona state prisoners are exhausted for purposes of federal habeas once the Arizona Court of Appeals has ruled on them.'"  *Castillo v. McFadden*, 399 F.3d 993, 998 (9th Cir. 2005)(quoting *Swoopes v. Sublett*, 196 F.3d 1008, 1010 (9th Cir. 1999)).

## 2.  Procedural Default

Ordinarily, unexhausted claims are dismissed without prejudice.  *Johnson v. Lewis*, 929 F.2d 460, 463 (9th Cir. 1991).  However, where a petitioner has failed to properly exhaust his available administrative or judicial remedies, and those remedies are now no longer available because of some procedural bar, the petitioner has "procedurally defaulted" and is generally barred from seeking habeas relief.  Dismissal with prejudice of a procedurally defaulted habeas claim is generally proper absent a "miscarriage of justice" which would excuse the default.  *Reed v. Ross*, 468 U.S. 1, 11 (1984).

Respondents argue that Petitioner may no longer present his unexhausted claims to the state courts.  Respondents rely upon Arizona's preclusion bar, set out in Ariz. R. Crim. Proc. 32.2(a) and time limit bar, set out in Ariz. R. Crim. P.  32.4.  (Answer, Doc. 9 at 19-20.)

**Remedies by Direct Appeal** - Under Ariz.R.Crim.P. 31.3, the time for filing a

direct appeal expires twenty days after entry of the judgment and sentence. Moreover, no provision is made for a successive direct appeal.

Here, however, Petitioner's sentence was amended in his PCR proceeding. Arguably, Petitioner had a right to seek a direct appeal from that amended sentence. *See State v. Schneider*, 135 Ariz. 387, 389, 661 P.3d 651, 653 (App. 1982) (time to appeal ran from entry of amended order of dismissal).    In any event, however, the time for such appeal has long since passed.

Accordingly, direct appeal is no longer available for review of Petitioner's unexhausted claims.

**Remedies by Post-Conviction Relief** – Under Arizona's preclusion, waiver and timeliness bars, Petitioner can no longer seek review by a subsequent PCR Petition.

Preclusion Bar – Under the rules applicable to Arizona's post-conviction process, a claim may not be brought in a petition for post-conviction relief if the claim was "[f]inally adjudicated on the merits on appeal or in any previous collateral proceeding." Ariz. R. Crim. P. 32.2(a)(2).  Here, Respondents make no argument that this preclusion bar applies to any of Petitioner's claims.

Waiver Bar - Under the rules applicable to Arizona's post-conviction process, a claim may not ordinarily be brought in a petition for post-conviction relief that "has been waived at trial, on appeal, or in any previous collateral proceeding."    Ariz.R.Crim.P. 32.2(a)(3).   Under this rule, some claims may be deemed waived if the State simply shows "that the defendant did not raise the error at trial, on appeal, or in a previous collateral proceeding." *Stewart v. Smith*, 202 Ariz. 446, 449, 46 P.3d 1067, 1070 (2002) (quoting Ariz.R.Crim.P. 32.2, Comments). *But see State v.* Diaz, 236 Ariz. 361, 340 P.3d 1069 (2014) (failure of PCR counsel, without fault by petitioner, to file timely petition in prior PCR proceedings did not amount to waiver of claims of ineffective assistance of trial counsel).

For others of "sufficient constitutional magnitude," the State "must show that the defendant personally, "knowingly, voluntarily and intelligently' [did] not raise' the

ground or denial of a right." *Id*.  That requirement is limited to those constitutional rights "that can only be waived by a defendant personally." *State v. Swoopes*, 216 Ariz. 390, 399, 166 P.3d 945, 954 (App.Div. 2, 2007).  Indeed, in coming to its prescription in *Stewart v. Smith*, the Arizona Supreme Court identified: (1) waiver of the right to counsel, (2) waiver of the right to a jury trial, and (3) waiver of the right to a twelve-person jury under the Arizona Constitution, as among those rights which require a personal waiver.  202 Ariz. at 450, 46 P.3d at 1071.   Claims based upon ineffective assistance of counsel are determined by looking at "the nature of the right allegedly affected by counsel's ineffective performance. *Id*.

Here, none of Petitioner's claims are of the sort requiring a personal waiver, and Petitioner's claims of ineffective assistance similarly have at their core the kinds of claims not within the types identified as requiring a personal waiver.

Timeliness Bar - Even if not barred by preclusion, Petitioner would now be barred from raising his claims by Arizona's time bars.  Arizona Rule of Criminal Procedure 32.4 requires that petitions for post-conviction relief (other than those which are "of-right") be filed "within ninety days after the entry of judgment and sentence or within thirty days after the issuance of the order and mandate in the direct appeal, whichever is the later." *See State v. Pruett*, 185 Ariz. 128, 912 P.2d 1357 (App. 1995) (applying 32.4 to successive petition, and noting that first petition of pleading defendant deemed direct appeal for purposes of the rule).   That time has long since passed.

Exceptions - Rules 32.2 and  32.4(a) do not bar dilatory claims if they fall within the category of claims specified in Ariz.R.Crim.P. 32.1(d) through (h).  See Ariz. R. Crim. P.  32.2(b) (exceptions to preclusion bar); Ariz. R. Crim. P.  32.4(a) (exceptions to timeliness bar).  Petitioner has not asserted that any of these exceptions are applicable to his claims.   Nor does it appears that such exceptions would apply.   The rule defines the excepted claims as follows:

> d. The person is being held in custody after the sentence imposed has expired;
> e. Newly discovered material facts probably exist and such

facts probably would have changed the verdict or sentence. Newly discovered material facts exist if:

(1) The newly discovered material facts were discovered after the trial.

(2) The defendant exercised due diligence in securing the newly discovered material facts.

(3) The newly discovered material facts are not merely cumulative or used solely for impeachment, unless the impeachment evidence substantially undermines testimony which was of critical significance at trial such that the evidence probably would have changed the verdict or sentence.

f. The defendant's failure to file a notice of post-conviction relief of-right or notice of appeal within the prescribed time was without fault on the defendant's part; or

g. There has been a significant change in the law that if determined to apply to defendant's case would probably overturn the defendant's conviction or sentence; or

h. The defendant demonstrates by clear and convincing evidence that the facts underlying the claim would be sufficient to establish that no reasonable fact-finder would have found defendant guilty of the underlying offense beyond a reasonable doubt, or that the court would not have imposed the death penalty.

Ariz.R.Crim.P. 32.1.

Paragraph 32.1 (d) (expired sentence) generally has no application to an Arizona prisoner who is simply attacking the validity of his conviction or sentence. Where a claim is based on "newly discovered evidence" that has previously been presented to the state courts, the evidence is no longer "newly discovered" and paragraph (e) has no application. Here, Petitioner has long ago asserted the facts underlying his claims. Petitioner makes no assertion paragraph (f) applies. Paragraph (g) has no application because Petitioner has not asserted a change in the law since his last PCR proceeding. Finally, paragraph (h), concerning claims of actual innocence, has no application to the procedural claims Petitioner asserts in this proceeding.

Therefore, none of the exceptions apply, and Arizona's time and waiver bars would prevent Petitioner from returning to state court. Thus, Petitioner's claims that were not fairly presented are all now procedurally defaulted.

### 3. Application to Petitioner's Claims

**a.  Ground One – Prior Bad Acts Evidence** - In Ground One of his Petition, Petitioner argues that the admission of the prior acts evidence was a violation his 14th

Amendment rights to due process, Fifth Amendment right under the Compulsory Process Clause, and the right against self-incrimination.   Petitioner asserts that he raised this claim on direct appeal.  (Petition, Doc. 1 at 6.)

Respondents argue that although the facts of this claim were raised on Petitioner's direct appeal, he did not assert a federal claim in connection with the facts, and the only reference to federal law was a quotation referencing the burden of proof on other acts evidence as "clear and convincing" "consistent with the due process owed under the federal and state constitutions."  (Answer, Doc. 9 at 23, citing Exhibit P, Opening Brief at 7.) Respondents argue this is not fair presentation of any federal claim.  (*Id.* at 23-25.)

Petitioner does not address this Ground in his Reply (Doc. 10).

Indeed, the only proceeding in which any portion of this claim was raised was on Petitioner's direct appeal.

**<u>Presentation to Arizona Court of Appeals</u>** – In Petitioner's direct appeal to the Arizona Court of Appeals, appellate counsel presented the facts now asserted, but plainly constructed a claim based upon Arizona Rule of Criminal Procedure 15.1(b)(7) (notice of intent to present prior bad act evidence) and 15.7(a) (preclusion for untimely disclosure) and Arizona Rule of Evidence 403 (unfairly prejudicial evidence) and 404(b) (prior bad acts).  Only two references to federal law are made in that Petition.

First, Petitioner made two references to *Miranda v. Arizona*, 384 U.S. 436 (1966), at pages 4 and 8 of his brief.  However, that was solely for purposes of referencing an argument by the State at trial that the interview with the inculpatory statements by Petitioner about his prior bad acts had been addressed at the "evidentiary hearing under *Miranda*" to determine whether the entire interview was excludable.  It was not a basis for relief urged on appeal.  (Exhibit P, Opening Brief at 4 and 8, n. 7)  Petitioner made no other references to *Miranda* or other related cases, or to the federal right against self-incrimination.

Second, in arguing the applicable standard of evidence and need for an evidentiary hearing before making an undue prejudice determination, Petitioner quoted a

portion of an Arizona case quoting a Georgia case which referenced its standard as "consistent with the due process owed under the federal and state constitutions." (Exhibit P, Opening Brief at 7 (quoting *State v. Terrazas*, 189 Ariz. 580, 584, 944 P.3d 1194, 1198 (1997).)

However, the quoted case, *Terrazas*, did not involve a federal constitutional determination.  Rather, the Arizona Supreme Court was determining the standard to be applied to evidence of prior bad acts under the Arizona rule.  The Arizona court found "important reasons" to adopt a clear and convincing standard, including the impact of such evidence on the jury as shown by various studies, and the standard adopted by Georgia in the quoted decision, *Smith v. State*, 267 Ga. 363, 478 S.E.2d 379, 381 (1996) (Fletcher, P.J., concurring).  The *Smith* concurrence was similarly opining that "clear and convincing" was the proper state standard on a prior bad act, and found that standard consistent with "our sister states" and "consistent with the due process owed under the federal and state constitutions."  *Id.*

It is true that while the presentation of a federal claim by explicit reference to federal law is preferred, "a citation to a state case analyzing a federal constitutional issue serves the same purpose as a citation to a federal case analyzing such an issue." *Peterson v. Lampert*, 319 F.3d 1153, 1158 (9th Cir. 2003).   However, there must generally be an indication that the state case is being cited for its constitutional analysis, or it must be limited to such an analysis.  A drive-by-citation of a state case applying federal and state law is not sufficient.

> For a federal issue to be presented by the citation of a state decision dealing with both state and federal issues relevant to the claim, the citation must be accompanied by some clear indication that the case involves federal issues. Where, as here, the citation to the state case has no signal in the text of the brief that the petitioner raises federal claims or relies on state law cases that resolve federal issues, the federal claim is not fairly presented.

*Casey v. Moore*, 386 F.3d 896, 912 n. 13  (9th Cir. 2004).  Here, Petitioner's counsel made no clear indication that these cases were being cited for their federal constitutional analyses. Thus, neither *Terrazas* nor *Smith* can be read as an indication that a federal due

process standard was being applied, but simply that the applicable state standard had been adopted to insure it would be consistent with due process requirements.

Moreover, it is relevant that Petitioner was represented by counsel in that proceeding.  "When a document has been written by counsel, a court should be able to attach ordinary legal significance to the words used in that document."  *Peterson v. Lampert*, 319 F.3d 1153, 1159 (9th Cir. 2003).  Petitioner's appellate counsel did not make any other references to federal due process, or the application of a due process standard.  Rather, counsel was simply arguing what the standard of proof would have been under Arizona law had the trial court conducted a hearing on the prior bad acts evidence.  Thus the ordinary legal significance of his argument was not to assert a federal claim, but to argue what was plainly said in the *Smith* quote, *i.e.* that the standard being applicable was *consistent* with due process, not that it was mandated by federal due process.

Accordingly, Petitioner failed to fairly present to the Arizona Court of Appeals the federal claims he now asserts.

Petitioner's Opening Brief  made no reference to a right to compulsory process, and made only a passing reference, without citation, to  being forced to "give-up his right not to testify in order to rebut the 'other acts' and inferences therefrom."  (Exhibit P, Opening Brief at 9.)

Thus, the undersigned concludes that Petitioner did not fairly present to the Arizona Court of Appeals on direct appeal the due process, compulsory process, and self-incrimination claims he asserts in Ground 1.

**Presentation to the Arizona Supreme Court** - Petitioner strayed closer to asserting a federal due process claim in his Petition for Review to the Arizona Supreme Court.  For example, he argued that the failure to provide notice prior to deciding the admissibility of the prior bad acts evidence "implicates Due Process." (Exhibit U, Pet. Rev. at 6.)  Further, he argued that due process required notice and an opportunity to be heard.  (*Id.* at 7.)  However, Petittioner failed to identify whether he was asserting a

federal due process right rather than a state right.

It is true that the cases Petitioner cited in connection with his due process argument, although state cases, addressed at least in part a federal due process question. (*Id.*)  For example, in *State v. Korzuch*, 186 Ariz. 190, 920 P.2d 312 (1996), the Arizona Supreme Court applied both federal and state constitutional law to determine that notice and a hearing were required due process prior to an extension of probation for nonpayment of restitution.  Similarly, in *State v. Stocks*, 227 Ariz. 390, 394, 258 P.3d 208, 212 (Ct. App. 2011), the appellate court considered a claim that both "the Fourteenth Amendment to the United States Constitution and Article 2, § 4 of the Arizona Constitution" required notice and a hearing before funds were deducted from a prisoner's account.    In contrast, in *Wallace v. Shields*, 175 Ariz. 166, 176, 854 P.2d 1152, 1162 (Ct. App. 1992), the appellate court found that the disputed statute "contravenes Art. II, section 4 of the Arizona Constitution, and therefore, must fail," although the court also discussed the federal due process clause.[2]

However, Petitioner's counsel made no clear indication that any of these cases were being cited for their federal constitutional analyses.  Thus, no federal claim was fairly presented.  *Casey*, 386 F.3d at 916.

Moreover, the presentation of a claim for the first time in a petitioner's petition for review to the Arizona Supreme Court on direct review is not sufficient to fairly present the claim to the Arizona courts.  The Arizona Supreme Court generally will not consider issues raised for the first time before it, although it has the discretion to do so.  *See Town of South Tucson v. Board of Supv'rs of Pima County*, 52 Ariz. 575, 84 P.2d 581 (1938).  Raising "federal constitutional claims for the first and only time to the state's highest court on discretionary review" is not fair presentation.  *Casey v. Moore*,

---

[2] Petitioner also cited *Colorado v. Connelly*, 479 U.S. 157 (1986).  (Exhibit U, Pet. Rev. at 7.)  But he did so only for purposes of contrasting the "clear and convincing" standard applicable to his prior bad acts evidence with the "preponderance of the evidence" standard applied in *Connelly* to proving the voluntariness of an admission.  Similarly, he included a quotation referencing *Smith v. United States*, 348 U.S. 147 (1954). (Exhibit U, Pet. Rev. at 8 (quoting *State v. Rubiano*, 214 Ariz. 184, ¶ 7, 150 P.2d 271, 271 (App. 2007)).)  But that discussion was related only to an assertion of the *corpus delicti* rule.

386 F.3d 896, 918 (9th Cir. 2004).  Rather, to properly exhaust a claim, "a petitioner must properly raise it on every level of direct review."  *Id.* at 916.

> Academic treatment accords: The leading treatise on federal habeas corpus states, "Generally, a petitioner satisfies the exhaustion requirement if he properly pursues a claim (1) throughout the entire direct appellate process of the state, or (2) throughout one entire judicial postconviction process available in the state."

*Id*. at 916 (quoting Liebman & Hertz, *Federal Habeas Corpus Practice and Procedure*, § 23.3b (4th ed. 1998)).  As discussed above, Petitioner did not properly raise his federal claims before the Arizona Court of Appeals.  Accordingly, his new assertion of a federal due process claim in his Petition for Review would not constitute fair presentation.

Accordingly, the undersigned concludes that Petitioner did not fairly present his claims in Ground 1, and thus failed to properly exhaust his state remedies on these claims.   For the reasons discussed hereinabove, the undersigned concludes that Petitioner's state remedies on these claims have now been procedurally defaulted.

**b. Ground Two – *Brady* Violation** – In Ground Two of his Petition, Petitioner argues that the state violated the *Brady* rule by withholding information concerning unprofessional conduct by the case agent, depriving Petitioner of a fair trial and the ability to effectively confront and cross-examine the detective in violation of Petitioner's Fourteenth Amendment right to due process and his Sixth Amendment right under the Confrontation Clause.  Petitioner argues that the case agent's credibility was already in question because of misconduct at the crime scene, including destroying property, photos, antiques, etc., and leaving a note "hugs and kisses from the special crimes unit." Petitioner alleges that this claim was presented to the Arizona Court of Appeals in his first PCR proceeding.  (Petition, Doc. 1 at 7.)

Respondents argue that this claim was presented in the first PCR proceeding, but it was procedurally barred when "the state court expressly applied a procedural bar to avoid considering its merits."  (Answer, Doc. 9 at 25.)

1    Petitioner does not address this claim in his Reply (Doc. 10).

2    Respondents appear to conflate exhaustion with fair presentation.  It is exhaustion

3    of the state court's prerogative to first address the claim which is required, not fair

4    presentation. *See* 28 U.S.C. § 2254(b)(1)(A) ("the applicant has exhausted the remedies

5    available"). "Habeas petitioners have long been required to adjudicate their claims in

6    state court-that is, 'exhaust' them-before seeking relief in federal court. This requirement

7    is 'grounded in principles of comity[,] as it gives states the first opportunity to address

8    and correct alleged violations of state prisoner's federal rights.'"  *King v. Ryan*, 564 F.3d

9    1133, 1138 (9th Cir. 2009).    Fair presentation is merely one means to exhaust state

10   remedies.

11   Thus, a state court's actual consideration of a claim satisfies exhaustion. *See*

12   *Sandstrom v. Butterworth*, 738 F.2d 1200, 1206 (11th Cir.1984) ("[t]here is no better

13   evidence of exhaustion than a state court's actual consideration of the relevant

14   constitutional issue"); *see also Walton v. Caspari*, 916 F.2d 1352, 1356-57 (8th

15   Cir.1990) (state court's *sua sponte* consideration of an issue satisfies exhaustion).  Here,

16   the Arizona Court of Appeals had and took that opportunity.

17   Related to the concept of procedural default is the principle of barring claims

18   actually disposed of by the state courts on state grounds.  "[A]bsent showings of 'cause'

19   and 'prejudice,' federal habeas relief will be unavailable when (1) 'a state court [has]

20   declined to address a prisoner's federal claims because the prisoner had failed to meet a

21   state procedural requirement,' and (2) 'the state judgment rests on independent and

22   adequate state procedural grounds.' " *Walker v. Martin*, 562 U.S. 307, 316 (2011).  In the

23   procedural bar context, it is not the state's prerogative to have first crack at fixing its

24   errors which is being protected, but rather it is the state court's actual judgment (that

25   state law barred the claim) that is being honored.

26   Respondents argue that the Arizona Court of Appeals "expressly applied a

27   procedural bar."  That argument is belied by Respondents own analysis of the procedural

28   background.  Respondents concede:

1.  that Petitioner raised his *Brady* claim in his PCR petition  (Answer, Doc. 9 at 25);

2.  that the PCR court failed to address the claim, and instead addressed only the related claim of ineffective assistance[3] (*id.* at 26);

3.  that Petitioner again presented the claim in his Petition for Review (*id.*)

4.  that the Arizona Court of Appeals determined the claim to be without merit (*id.* at 27); and

5.  that the Arizona Court of Appeals declined to decide the procedural issue (*id.* at 27).

Indeed, as noted by Respondents (*id.* at 27), the Arizona Court of Appeals concluded: "[b]ecause Price's claims do not warrant relief on the merits, we need not determine whether a *Brady* claim properly can be raised for the first time in a Rule 32 proceeding independent of a claim of newly discovered evidence or ineffective assistance of counsel. *See* Ariz. R. Crim. P. 32.1; 32.2(a)." (Exhibit GG, Mem. Decl at 3 n.2.)

Thus, rather than expressly applying the procedural bar, the Arizona Court of Appeals expressly declined to apply the bar.  Thus, there is no state court judgment (at least on state law grounds) to be honored by this habeas court.

It is true that had the Arizona Court of Appeals actually applied their procedural bar, even though addressing the merits, habeas review would still be barred.  The state court may reach "the merits of a federal claim in an alternative holding" and still avoid habeas review, "as long as the state court explicitly invokes a state procedural bar rule." *Harris v. Reed*, 489 U.S. 255, 264 n. 10 (1989).  In such an instance, the habeas court must still honor the state court's judgment applying the state bar (assuming the bar is "independent and adequate").  But here, there was no explicit invocation of the state bar, but rather an explicit avoidance of it.

> When a state court declines to find that a claim has been waived by a petitioner's alleged failure to comply with state procedural rules, our respect for the state-court judgment counsels us to do the same. Although we have an independent duty to scrutinize the application

---

[3] The Arizona Court of Appeals also concluded that the "the trial court did not expressly address his claim based on *Brady*."  (Exhibit GG, Mem. Dec. at 3, n.1)

18

> of state rules that bar our review of federal claims, we have no concomitant duty to apply state procedural bars where state courts have themselves declined to do so.

*Cone v. Bell*, 556 U.S. 449, 468-69 (2009).[4]

Thus, the undersigned concludes that Petitioner's state remedies on his *Brady* claim in Ground 2 have been properly exhausted.

**c.  Ground Three – Ineffectiveness re *Brady* Material** – In Ground 3 of the Petition, Petitioner argues that trial counsel was ineffective for failing to pursue the impeachment material underlying his *Brady* claim in Ground 2.  Respondents make no argument that Petitioner's state remedies on this claim were not properly exhausted.  Indeed, Petitioner presented this claim to the Arizona Court of Appeals in his PCR proceeding.  (Exhibit DD, Pet. Rev. at 8.)  The claim was addressed on its merits by the Arizona Court of Appeals.  (Exhibit GG, Mem. Dec. at 4.)

Accordingly, the undersigned concludes that Petitioner properly exhausted his state remedies on Ground 3.

**d. Ground Four – Ineffectiveness re Plea Offer** – In Ground 4 of his Petition, Petitioner argues that trial counsel was ineffective for failing to adequately advise Petitioner on a plea offer.  The Petition concedes that this claim was not presented to the Arizona Court of Appeals, and asserts as cause the failure of PCR counsel to raise the claim, referencing *Martinez v. Ryan*, 132 S. Ct. 1315 (2012).  (Petition, Doc. 1 at 9.)

Respondents argue that the claim has never before been raised, it is now procedurally defaulted, and that cause is not shown under *Martinez* because the claim is without merit.  (Answer, Doc. 9 at 28-29.)

Petitioner replies at length on the applicability of *Martinez* and the merits of Ground Four.  (Doc. 10.)

---

[4]  Ironically, the Arizona Court of Appeals cited *Cone* in the next paragraph of its decision, albeit for purposes of determining the materiality of the *Brady* evidence. (Exhibit GG, Mem. Dec. at 3, ¶ 6.)

Petitioner admits his state remedies on this claim were not properly exhausted. Indeed, the claim was not raised on direct appeal or in his PCR proceeding.

For the reasons discussed hereinabove, the undersigned concludes that Petitioner's state remedies on this claim are now procedurally defaulted.[5]

**e.  Summary Re Exhaustion** – Based upon the foregoing, the undersigned concludes that Petitioner properly exhausted his remedies as to: (1) Ground 2 (*Brady*); and (2) Ground 3 (Ineffectiveness re *Brady* Material).

Also based on the foregoing, the undersigned concludes that Petitioner has procedurally defaulted on: (1) Ground 1 (Prior Bad Acts); and (2) Ground 4 (Ineffectiveness re Plea Offer).

**B.  CAUSE AND PREJUDICE**

**1.  General Standard**

If the habeas petitioner has procedurally defaulted on a claim, or it has been procedurally barred on independent and adequate state grounds, he may not obtain federal habeas review of that claim absent a showing of "cause and prejudice" sufficient to excuse the default.  *Reed v. Ross*, 468 U.S. 1, 11 (1984).

"Cause" is the legitimate excuse for the default.  *Thomas v. Lewis*, 945 F.2d 1119, 1123 (1991). "Because of the wide variety of contexts in which a procedural default can occur, the Supreme Court 'has not given the term "cause" precise content.'" *Harmon v. Barton*, 894 F.2d 1268, 1274 (11th Cir. 1990) (quoting Reed, 468 U.S. at 13), *cert. denied*, 498 U.S. 832 (1990).  The Supreme Court has suggested, however, that cause

---

[5] Petitioner might have been able to raise in a successive PCR petition the ineffectiveness of PCR counsel in failing to raise the ineffectiveness of trial counsel. *See State v. Pruett*, 185 Ariz. 128, 131, 912 P.2d 1357, 1360 (Ct. App. 1995).  Although Petitioner relies upon PCR counsel's ineffectiveness as cause to excuse his failure to exhaust his state remedies on Ground 4, he does not assert such ineffectiveness as a claim for relief in this proceeding.  Even so, under Ariz. R. Crim. P. 32.4(a), such petition would have been due "within 30 days of the order and mandate affirming the trial court's denial of the petitioner's first petition for post-conviction relief." *Id.*  That time has long since passed, and accordingly, such claim would now be procedurally defaulted.

should ordinarily turn on some objective factor external to petitioner, for instance:

> ... a showing that the factual or legal basis for a claim was not reasonably available to counsel, or that "some interference by officials", made compliance impracticable, would constitute cause under this standard.

*Murray v. Carrier*, 477 U.S. 478, 488 (1986) (citations omitted).

Petitioner argues a single basis for a finding of cause, namely the ineffective assistance of PCR counsel in failing to raise the claim of ineffective assistance of trial counsel set out in Ground 4 (Ineffectiveness re Plea Offer).  (Reply, Doc. 10.)

## 2.  Ineffectiveness of PCR Counsel As Cause

### a.  General Rule of No Cause

Ordinarily, to meet the "cause" requirement, the ineffective assistance of counsel must amount to an independent constitutional violation.  *Ortiz v. Stewart*, 149 F.3d 923, 932, (9th Cir. 1998).  Accordingly, where no constitutional right to an attorney exists, ineffective assistance will not amount to cause excusing the state procedural default.  *Id*. "Ineffective assistance of counsel can constitute cause to excuse a procedural default only if the petitioner had a constitutional right to counsel in the proceeding in which the default occurred. . . . The fact that counsel is appointed by the state court does not change the result, because counsel is not constitutionally required."  *Smith v. State of Idaho*, 392 F.3d 350, 357 (9th Cir. 2004) (emphasis in original, citations omitted).  In *Patrick Poland v. Stewart*, 169 F. 3d 573 (9th Cir. 1999), the Ninth Circuit held that "[b]ecause there is no right to an attorney in state post-conviction proceedings, there cannot be constitutionally ineffective assistance of counsel in such proceedings."  *Id*. at 588 (quoting *Coleman v. Thompson*, 501 U.S. 722,  752 (1991)).

### b.  Exception for Abandonment without Notice

The Supreme Court has recognized two exceptions to the general rule that ineffectiveness of PCR counsel is not cause.

The first exception was recognized in *Maples v. Thomas*, 132 S.Ct. 912 (2012), where the Supreme Court held that cause could be shown when PCR counsel was not merely negligent (and under the law of agency that negligence being chargeable to the petitioner) but had abandoned the representation without notice to the petitioner, resulting in the loss of his state remedies.

Here, however, Petitioner does not suggest that counsel abandoned the representation without notice, merely that counsel was deficient in not bringing claims Petitioner asserts are meritorious. Thus, any such deficiency was not external to the defense, and is chargeable to Petitioner.

### c.  Exception for Claims re Ineffectiveness of Trial Counsel

The second exception to the general rule that ineffectiveness of PCR counsel does not establish cause concerns the failure of PCR counsel to bring claims of ineffective assistance of trial counsel.[6]

### (1) Limited Exception

In *Martinez v. Ryan,* 132 S.Ct. 1309 (2012), the Court recognized that because courts increasingly reserve review of claims of ineffective assistance of trial counsel to post-conviction relief proceedings, the ineffectiveness of counsel in such PCR proceedings could effectively defeat any review of trial counsel's ineffectiveness. Accordingly, the Court recognized a narrow exception to the Court's ruling in *Coleman, supra,* that the ineffectiveness of PCR counsel cannot provide cause.  Arizona, the state at issue in *Martinez*, is just such a state, and accordingly ineffective assistance of PCR counsel can establish cause to excuse a procedural default of a claim of ineffective

---

[6]  The Ninth Circuit has concluded that an ineffective assistance of PCR counsel claim used to establish cause for a procedural default of a claim for ineffective assistance of trial counsel need not be exhausted itself.  *Dickens v. Ryan*, *Dickens v. Ryan*, 740 F.3d 1302, 1322 n. 17 (9th Cir. 2014) ("where *Martinez* applies, there seems to be no requirement that the claim of ineffective assistance of PCR counsel as cause for an ineffective-assistance-of-sentencing-counsel claim be presented to the state courts").

1  assistance of trial counsel.

2  *Martinez* only applies to the important "right to the effective assistance of trial

3  counsel."[7]   132 S.Ct. at 1320.   Accordingly, any complaint that PCR counsel was

4  ineffective for failing to assert other types of claims cannot form cause to excuse a

5  failure to properly exhaust state remedies on those other claims.   Accordingly,

6  Petitioner's argument under *Martinez* cannot constitute cause to excuse his procedural

7  default on Ground 1 (Prior Bad Acts).

8

9  ### **(2) *Martinez* Standard**

10  For Petitioner to rely upon *Martinez*, Petitioner must "demonstrate[e] two things:

11  (1) 'counsel in the initial-review collateral proceeding, where the claim should have been

12  raised, was ineffective under the standards of *Strickland v. Washington*, 466 U.S. 668,

13  104 S.Ct. 2052, 80 L.Ed.2d 674 (1984),' and (2) 'the underlying ineffective-assistance-

14  of-trial-counsel claim is a substantial one, which is to say that the prisoner must

15  demonstrate that the claim has some merit.'"   *Cook v. Ryan*, 688 F.3d 598, 607 (9th Cir.

16  2012)  (quoting *Martinez*, 132 S.Ct. at 1318).

17  In many instances the two *Martinez* prongs are so intertwined that they will be

18  subsumed into one analysis focused on one or the other prongs, *i.e.* trial counsel's

19  performance or PCR counsel's performance.   There remains, however, a clear distinction

20  between the prongs.   For example, there are gradations of the potential for success, and

21  ultimate effect, of the foregone trial tactic.   Some underlying claims will be so attractive

22  that trial counsel was clearly ineffective, and thus (barring inability to discover, or other

23  impediments), PCR counsel was clearly ineffective in not raising the ineffectiveness

24  claim.   Others underlying tactics may be so clearly meritless that both trial and PCR

25  counsel were obviously not ineffective in avoiding the claim.   And there may be still

26  others, in the middle ground, that are substantial enough that (while perhaps not

27  ────────────
[7] In *Ha Van Nguyen*, 736 F.3d 1287 (9th Cir. 2013), the Ninth Circuit extended *Martinez*
28  to PCR counsel's ineffectiveness in failing to bring claims of ineffective assistance of
appellate counsel.  Petitioner asserts no claim of ineffectiveness of appellate counsel.

1   guaranteed of success) they require a determination whether PCR counsel had other

2   tactical reasons to raise or not raise  the claim, *i.e.* the availability or absence of other,

3   more attractive, claims, or was otherwise acting reasonably in foregoing the claim.

4

5      **(3)  Standard for Ineffectiveness**

6      Generally, claims of ineffective assistance of counsel are analyzed pursuant to

7   *Strickland v. Washington*, 466 U.S. 668 (1984).  In order to prevail on such a claim,

8   Petitioner must show:  (1) deficient performance - counsel's representation fell below the

9   objective standard for reasonableness; and (2) prejudice - there is a reasonable

10  probability that, but for counsel's unprofessional errors, the result of the proceeding

11  would have been different.  *Id.*  at  687-88.  Although the petitioner must prove both

12  elements, a court may reject his claim upon finding either that counsel's performance

13  was reasonable or that the claimed error was not prejudicial.  *Id.* at 697.

14      **Deficient Performance** -  An objective standard applies to proving such

15  deficient performance, and requires a petitioner to demonstrate that counsel's actions

16  were "outside the wide range of professionally competent assistance, and that the

17  deficient performance prejudiced the defense."  *United States v. Houtcens*, 926 F.2d 824,

18  828 (9th Cir. 1991) (quoting *Strickland*, 466 U.S. at 687-90).    The reasonableness of

19  counsel's actions is judged from counsel's perspective at the time of the alleged error in

20  light of all the circumstances.  *Kimmelman v. Morrison*, 477 U.S. 365, 381 (1986);

21  *Strickland*, 466 U.S. at 689.

22      Moreover, there is a strong presumption counsel's conduct falls within the wide

23  range of reasonable professional assistance and that, under the circumstances, the

24  challenged action might be considered sound trial strategy.   *U.S. v. Quinterro-Barraza*,

25  78 F.3d 1344, 1348 (9th Cir. 1995), *cert. denied*, 519 U.S. 848 (1996); *U.S. v. Molina*,

26  934 F.2d 1440, 1447 (9th Cir. 1991).    The court should "presume that the attorneys

27  made reasonable judgments and decline to second guess strategic choices."  *U.S. v.*

28  *Pregler*, 233 F.3d 1005, 1009 (7th Cir. 2000).

Furthermore, it is clear that the failure to take futile action can never be deficient performance. *See Rupe v. Wood*, 93 F.3d 1434, 1445 (9th Cir.1996); *Sexton v. Cozner*, 679 F.3d 1150, 1157 (9th Cir. 2012).  "The failure to raise a meritless legal argument does not constitute ineffective assistance of counsel."  *Baumann v. United States*, 692 F.2d 565, 572 (9th Cir. 1982).  Similarly, counsel is free to and expected to exercise professional judgment in deciding which tactics and defenses to pursue.  "The law does not require counsel to raise every available nonfrivolous defense. Counsel also is not required to have a tactical reason—above and beyond a reasonable appraisal of a claim's dismal prospects for success—for recommending that a weak claim be dropped altogether." *Knowles v. Mirzayance*, 556 U.S. 111, 127 (2009) (citations omitted).

**Requirement of *Strickland* Prejudice Still Applies** – Petitioner seems to argue in his Reply that an assertion of cause under *Martinez* can be shown without meeting the prejudice requirement under *Strickland*.  (Reply, Doc. 10 at 2-7.)

*Martinez* recognizes that where the court finds prejudice from the ineffectiveness of trial counsel in the underlying claim, then the court need not again analyze prejudice for purposes of finding PCR counsel ineffective or to satisfy the cause prong under the "cause and prejudice" standard.

In the words of the Ninth Circuit, the finding of ineffectiveness of trial counsel "may be seen as the *Martinez* equivalent of the 'prejudice' requirement under the ordinary 'cause' and 'prejudice' rule.  *Detrich v. Ryan*, 740 F.3d 1237, 1245 (9th Cir. 2013), *cert. denied*, 134 S. Ct. 2662 (2014).  Conversely, the requirement under *Martinez* that in the PCR proceeding "there have been ' 'no counsel' or only 'ineffective' counsel,' may be seen as the *Martinez* equivalent of the 'cause' requirement of the [cause and prejudice] rule."  *Detrich*, 740 F.3d at 1245.

Similarly, the Ninth Circuit concluded that the prejudice from trial counsel's deficient performance is sufficient to meet the *Strickland* prejudice with regard to ineffectiveness of PCR counsel.  "A prisoner need not show actual prejudice resulting from his PCR counsel's deficient performance, over and above his required showing that

the trial-counsel IAC claim be 'substantial' under the first *Martinez* requirement." *Id.* at 1245-1246.

Thus, Petitioner still remains obligated under *Martinez* and its progeny to show prejudice from the deficient performance of trial counsel (*e.g.* would the result of the trial have been different had trial counsel performed adequately).   Once deficient performance by trial counsel and resulting prejudice is shown, the habeas court need only determine whether, under the circumstances, PCR counsel performed deficiently.  If so, then the cause and prejudice standard has been fully satisfied.

### (4)  AEDPA Limitations Inapplicable to Cause and Prejudice Determination

In evaluating the ineffectiveness of PCR counsel (and as part thereof, the ineffectiveness of trial counsel), this habeas Court is not constrained by the limits on grants of habeas relief in 28 U.S.C. § 2254, *i.e.* state court decisions contrary to or unreasonable application of Supreme Court law, etc.. *See Dickens v. Ryan*, 740 F.3d 1302 (9th Cir. 2014).  *Cf. Martinez*, 132 S.Ct. at 1320 (finding limits on habeas relief for ineffectiveness of PCR counsel not applicable to cause and prejudice determination).

### 3.  Application of *Martinez* to Petitioner

#### a. Failures of Trial Counsel

#### (1)  Parties' Arguments

In his Ground 4, Petitioner argues that trial counsel was ineffective for failing to adequately advise Petitioner on a plea offer.  Petitioner argues that at the hearing on August 25, 2010, the state re-extended a prior offer which limited Petitioner's sentencing exposure to 7.5 years, substantially less than the 11 year sentence he received at trial. Petitioner argues that counsel rejected that offer without conferring with Petitioner. Petitioner argues that counsel did not advise him he could be convicted based on the taped interview alone and wrongly advised him it was inadmissible and only evidence of prior bad acts, and never reviewed with Petitioner the elements of the offense or the

evidence, or the risks and benefits of trial.

Respondent argues that the record reflects that Petitioner had been repeatedly presented the plea offer, had been through more than one settlement conference evaluating the pleas, and had consistently rejected the plea offers.  Moreover, the trial court compared the risks and benefits of the plea offer with Petitioner on the record prior to proceeding with trial.  And, Petitioner was aware of the evidence against him, which consisted primarily of his own interview, because Petitioner was present at the voluntariness hearing on the admissibility of the interview, and admitted at trial that he had reviewed the transcript prior to testifying. (Answer, Doc. 9 at 36-39.)

Petitioner replies the record does not reflect the advice from counsel that Petitioner would not be convicted of the sales charge because his confession to sales in his interview was excludable.  Petitioner argues that his conviction ultimately only occurred because counsel had failed to prevent the confession of sales from being presented to the jury.  (Reply, Doc. 10 at 9.)  Petitioner argues that this is consistent with trial counsel's assertions that he had discussed the risks and benefits of trial and the plea with this client.  (*Id.* at 10.)  Under, counsel's advice, there was no risk to trial and no benefit under the plea. (*Id.* at 11.)  It was only when counsel deficiently stipulated to the introduction of the entire interview that the risks of trial materialized.  (*Id.* at 12.)  Conversely, Petitioner argues that, as shown by the rulings ultimately made on the issue, counsel's advice was wrong and the evidence would have been admitted even if counsel had properly objected.  (*Id.* at 13.)

In his Supplemental Answer (Doc. 25), Respondent points to trial counsel's Declaration, and argues that Petitioner was adequately advised about the plea offer and risks and benefits of trial, insisted on going to trial based on a believe that he could explain away his statements to the investigating officers, and would only accept a probation available plea offer. Respondent argues that counsel confirmed Petitioner's refusal of the renewed offer, did not advise Petitioner the taped statement was inadmissible, and did not advise that Petitioner would not be convicted without the

statement.  Respondent points to PCR counsel's declaration and argues that the decision to forego the claim in Ground 4 was a reasonable tactical evaluation of the merits of the claim.  Respondents concede that the supplemented record may be considered for purposes of the cause and prejudice analysis, but argue no evidentiary hearing is required in light of the declarations of counsel.

Petitioner argues in his Supplemental Reply (Doc. 26) that the record refutes trial counsel's contention that he did not advise Petitioner that the taped statement would be inadmissible, and did not advise that the statement was prior act evidence.   Petitioner argues that the trial strategy was to exclude the statement and argue that the jury was left with a reasonable doubt that the only criminal conduct was possession for personal use. Petitioner argues that when the plea offer was reopened at trial, counsel declined the trial court's suggestion for a recess to discuss the matter with Petitioner, and rejected the plea based upon reliance on the exclusion of the taped statement.  Petitioner argues he did not get a chance to consider the plea offer after the trial court ruled that the taped statement was admissible.  Petition argues that the taped statement would not, in any event, have qualified as prior act evidence, because it was a confession, and that no balancing test was required for its admission.  He further argues that trial counsel and PCR counsel were friends and were "professional brothers."  (*Id.* at 10.)

### (2) Trial Counsel's Declaration

In his Declaration, trial counsel asserts that on multiple occasions he reviewed with Petitioner the "benefit of accepting the plea offer(s) versus the risk of a conviction after trial."  (Kelly Declaration, Doc. 21, Attachment A at 4.)  He asserts that the "risk/benefit analysis was discussed during settlement conference(s) with the Yavapai County Superior Court."  (*Id.*) He asserts that Petitioner only expressed interest in a "probation available plea agreement," and was insistent upon pursuing a defense that the methamphetamine was solely for personal use and that his statements to the detective could be explained away.  (*Id.* at 5-6.)  He asserts that he discussed with Petitioner the

elements of the offense, the burdens of proof, and the inferences from the quantity of drugs and other indicia of sale.  (*Id.* at 6-7.)  Counsel asserts that he "did **not** advise James Price that his tape-recorded statement would not be admissible at trial; and…did **not** characterize his tape-recorded statement as prior act evidence."  (*Id.* at 7 (emphasis in original).)

### (3) Necessity of Evidentiary Hearing

Petitioner contends that he is entitled to an evidentiary hearing to address his *Martinez* claim.

"We begin with the rule that no such hearing is required '[i]f the record refutes the applicant's factual allegations or otherwise precludes habeas relief.'" *Hibbler v. Benedetti*, 693 F.3d 1140, 1148 (9th Cir. 2012).  Moreover, a bald request for an evidentiary hearing need not be granted.  "In deciding whether to grant an evidentiary hearing, a federal court must consider whether such a hearing could enable an applicant to prove the petition's factual allegations, which, if true, would entitle the applicant to federal habeas relief."  *Schriro v. Landrigan*, 550 U.S. 465, 474 (2007).  Where a petitioner does not proffer any evidence to be adduced at an evidentiary hearing which would prove the allegations of the petition, the habeas court need not grant a hearing. *Chandler v. McDonough*, 471 F.3d 1360, 1363 (11th Cir. 2006)  ("The failure to proffer any additional evidence defeats [petitioner's] argument that he was entitled to an additional evidentiary hearing in federal court."); *Williams v. Bagley,* 380 F.3d 932, 977 (6th Cir.2004) ("district court did not abuse its discretion in denying Williams's request, given his failure to specify ... what could be discovered through an evidentiary hearing"); *Lincecum v. Collins,* 958 F.2d 1271, 1279–80 (5th Cir.1992) (denying evidentiary hearing "[a]bsent any concrete indication of the substance of the mitigating evidence" the hearing supposedly would provide).

Here, Petitioner proffers no evidence (beyond that contained in his own assertions and the declarations of counsel) to be introduced at an evidentiary hearing.  At best,

29

Petitioner argues that he is entitled to an opportunity to cross-examine counsel on the issues.  However, he proffers no reason to expect that such cross-examination would be fruitful.

### (4) Deficient Performance

**Failure to Confer** – Petitioner complains that trial counsel failed to confer with him before rejecting the final plea offer.  Trial counsel asserts:

> Mr. Sisneros reluctantly re-opened the plea agreement offering James Price 7.5 years in prison…During a break in the proceedings, Mr. Price and I again discussed the benefits of the plea offer and the risk of going to trial.  James Price was aware of the opportunity to accept the plea offer requiring 7.5 years in prison on the morning of trial. Mr. Price rejected the plea offer.  In open court, I relayed his rejection of the plea offer to the court. This discussion is on the record;

(Kelly Declaration, Doc. 21, Attachment A at 5.)   Indeed, the record reflects the reopening of the offer and its rejection in Petitioner's presence.  (Exhibit I, R.T. 8/25/10 at 5-6.)  It does not reflect a significant break in the proceedings.  While the trial court suggested "a brief recess," no recess was taken, and the time marks in the transcript reflect that less than a minute transpired between the trial court's addressing the matter, suggesting a recess, and trial counsel beginning his response to the Court on the offer. (*Id.* at 5.)    Thus, any consultation was brief.   But trial counsel explained to the trial court:

> MR. KELLY: Judge, if I may address that last issue, first of all, I do appreciate Mr. Sisneros' reopening of the offer. I know that you were recently assigned as the trial judge in this case, replacing Judge Lindberg. Judge Lindberg conducted an extensive Rule 17.4 conference evaluating the risk of going to trial versus the benefit under any plea agreement; In fact, I believe we've conducted a couple of those.
> This case has been pending for quite some time. I've had several opportunities to discuss the same risk of going to trial versus the benefit under the offer identified by Mr. Sisneros with my client. He is an educated, intelligent man; I believe he fully understands it. And as we sit here today, I've had a chance to visit with him, and he flatly rejects the plea offer, so I don't know what else we need to do for the record, but I don't want to waste the Court's time.

(*Id.* at 5-6.)  Petitioner voiced no objection to this assertion that he had conferred with

Petitioner about the offer.

The trial court then reviewed directly with Petitioner his sentencing exposure at trial as compared to the plea offer, and that Petitioner had decided to proceed to trial:

> THE COURT: And it is your decision to go to trial at this time?
>
> THE DEFENDANT: Yes, Your Honor.

(*Id.* at 6.)

Petitioner complains that counsel should have conferred with him outside of the courtroom.  If this were a new offer, or the first offer, that might have been the case.  But faced with a client who had previously rejected the same offer, as well as more favorable ones, counsel could have reasonably concluded that a brief conversation in the courtroom was sufficient.

**Advice re Conviction on Tape** – Petitioner complains that trial counsel failed to advise him he could be convicted "on the taped statement alone." (Petition, Doc. 1 at 9.) The undersigned finds nothing in the record to suggest that Petitioner was convicted based solely on the taped statement.   To the contrary, there was other substantial evidence to support Petitioner's conviction, including: (1) Petitioner's possession of a ledger of sales (Exhibit J, R.T. 8/27/10 at 51-52), as well as cash, scales, plastic bags, and methamphetamine; (2) recorded statements by Petitioner's girlfriend to police officers indicating Petitioner was involved in selling methamphetamine (*id.* at 71-76); (3) expert testimony that Petitioner's possessions at the time of arrest, including the quantity of drugs, the ledger, the scale, the plastic bags, etc. were indicative that the drugs were possessed for sale (*id.* at 164-170).  Thus, reasonably competent counsel would have had no reason to advise Petitioner that he could have been convicted based solely on the recorded statement.

**General Advice Regarding Plea Offer** - The undersigned finds nothing in the record, beyond Petitioner's own assertions, to support Petitioner's contentions that trial counsel failed to review the elements of the offense or the evidence, or the risks and benefits of trial and a plea.  To the contrary, Petitioner had repeatedly rejected the plea

offers, and rejected the final offer and confirmed to the trial court his understanding of the sentencing risks if he were convicted at trial.  (Exhibit I, R.T. 8/25/10 at 5-6.)  He voiced no objection when trial counsel represented to the trial court that such advice had been given.

Moreover, Petitioner's correspondence to trial counsel reflects a defendant who had long understood his options and the nature of the offenses with which he was charged.  For example, some seven months before trial, he described the choice between "going to trial and facing prosecution to the fullest extent" and taking a plea, albeit while positing a third option of waiting "for a better plea bargain."  (Kelly Declaration, Doc. 21, Attachment A, Exhibit A, Letter 1/9/10 at 2-3.)

**Advice Regarding Admission of Tape** – In his Supplemental Reply, Petitioner asserts that the record refutes trial counsel's final two statements regarding the admissibility of the tape and its characterization as prior act evidence.  (Supp. Reply at 1, *et seq.*)

There is nothing in the record to suggest that counsel advised Petitioner that the entire transcript would be excluded.  Apart from the unsuccessful voluntariness challenge, the only basis for seeking exclusion was the prior act evidence argument under Arizona Rule of Evidence 404(b), and that would not apply to portions of the transcript not establishing a *prior* act of selling drugs. *See* Ariz. R. Evid. 404(b) ("evidence of other crimes, wrongs, or acts is not admissible to provide the character of a person in order to show action in conformity therewith").  Certainly, the portions of the tape relating to Petitioner's conduct on the date in question, or not relevant to his character, would not be excludable under Rule 404(b).  In fact, the record reflects that prior to trial, Petitioner was working to provide trial counsel with explanations for his statements in the tape.  (Kelly Declaration, Doc. 21, Attachment A, Exhibit E, Letter and Transcript.)  Had counsel advised Petitioner that the entire transcript would be excluded under Rule 404(b), those explanations would have been superfluous.

On the other hand, counsel's assertion that he did not characterize the tape as

prior act evidence is confusing.  Indeed, counsel's objections at trial to the recorded statement reflect that counsel considered at least the portions of the statement referencing past sales to be objectionable prior act evidence.  (*See* Exhibit G, R.T. 8/27/10 at 17 *et seq.*)

Petitioner argues that counsel was "dead wrong…the evidence was not prior act…the claim [was] nonsense." (Suppl. Reply, Doc. 26 at 5.)   To the contrary, the Arizona Court of Appeals did not reject the contention that the taped statement constituted prior act evidence.  Instead, that court "assume[d], without deciding" that the admissions to prior drug sales "constitutes prior act evidence that is governed by Arizona Rule of Evidence ('Rule') 404(b)."  (Exhibit R, Mem. Dec. at 5.)  The Court went on to observe, however, that Rule 404(b) did not present a blanket bar to admission, but provided for admission if there was clear and convincing evidence of the act (which Petitioner's admission provided) and it was admitted for a permissible purpose, in this situation to show Petitioner's intent with respect to the instant possession, and its probative value was not outweighed by the potential for unfair prejudice.  (*Id.* at 6-7.)

Nonetheless, in its current state, the record leaves open the question whether trial counsel may have advised Petitioner that the portions of the statement evidencing prior sales of methamphetamine constituted "prior act" evidence and would be excluded at trial.

If it is assumed that trial counsel offered that advice to Petitioner, the question remains whether counsel performed deficiently in doing so and whether Petitioner was prejudiced.

Petitioner fails to show that advice that the tape would be excluded would have been deficient performance.  To be sure, such a prediction ultimately proved to be wrong.  But the Constitution does not require perfect or prescient counsel.  "[A]n erroneous strategic prediction about the outcome of a trial is not necessarily deficient performance." *Lafler v. Cooper*, 132 S. Ct. 1376, 1391 (2012).  Counsel had not only filed his motion to preclude the prior act evidence, but at least as of the time of the

renewed plea offer, there had been no opposition to the motion.

Petitioner complains that counsel should have first sought a ruling on the motion before allowing Petitioner to reject the renewed plea.  (Supp. Reply, Doc. 26 at 2.)  In hindsight given the eventual decision to admit the objectionable portions of the tape, that may have been the better choice.  But counsel's conduct is not evaluated with hindsight.  "What was reasonable under the circumstances must be evaluated as of the time that the legal services were rendered so as to minimize the distortions of hindsight."  *Caro v. Woodford*, 280 F.3d 1247, 1254 (9th Cir. 2002).  Reasonable counsel could have either concluded on the basis of no response that the prosecution did not intend to introduce the prior act portions of the tape, or could have made a reasonable tactical decision that (given the absence of response to the motion and the common judicial bias against belated arguments) pressing the matter at trial was more likely to result in the exclusion of those portions of the tape than forcing a decision in advance of trial.

Thus, a decision to respond to the renewed plea offer without first demanding a ruling on the motion in limine could have been a reasonable strategic choice.

### (5) Prejudice from Trial Counsel's Conduct

Finally, the undersigned finds no prejudice from any failing of counsel.  Where a defendant foregoes a plea offer based upon deficient performance of counsel, to establish prejudice he must show that "but for counsel's deficient performance there is a reasonable probability he and the trial court would have accepted the guilty plea," and that the sentence at trial was worse than that under the rejected plea offer.  *Lafler*, 132 S. Ct. at 1391.

Petitioner fails to show a reasonable probability that he would have accepted the plea offer in any event.  The only thing proffered by Petitioner to support his argument that he would have accepted the plea offer is his own assertion. The court must assess the circumstances surrounding the case to determine if the petitioner's allegation that he would have taken the other course is plausible.  *See United States v. Keller*, 902 F.2d

1391, 1394-95 (9th Cir. 1990)(petitioner failed to show prejudice because he entered plea as alternative to long trial, possible conviction on more serious charges and a longer sentence; additional information about parole eligibility was unlikely to affect his decision).

Here, the benefits of the plea offer were limited.  The final offer was for a minimum sentence of 7.5 years.  At trial, Petitioner faced a minimum of 10 years, and ultimately received 11.  Thus, the benefits of the plea agreement were not so great as to make Petitioner's insistence on pursuing the potential of success at trial (and counsel's acquiescence), an unreasonable choice.  Petitioner seems to argue that, with the tape statement admitted, there was no reason to proceed to trial.  To the contrary, many defendants faced with mildly beneficial plea offers decided to proceed to trial on the basis that convictions are never a sure thing - - witnesses fail to appear or are unexpectedly credible or incredible, procedural errors result in dismissals, juries are sympathetic.  Foregoing an offer of 7.5 years in prison, for a limited opportunity of no prison time, with the only penalty being an additional 2.5 years in prison, is a trade many defendants would make.

Moreover, with respect to the exclusion of the tape, the record reflects that the defense motion (Exhibit F) to exclude the tape was not made until July 2, 2010.  By that time, Petitioner had rejected other equally or more favorable plea agreements.  (*See* Exhibit D, Minute Entry 9/21/09; Exhibit E, M.E. 5/3/10; Kelly Declaration, Doc. 21, Attachment A at 3-4.)  Moreover, Petitioner was insistent throughout the proceedings on obtaining a plea offer which would permit him to be released.  (*See* Kelly Declaration, Doc. 21, Attachment A at 3-4, and Exhibits A & B (correspondence to trial counsel).)

Petitioner's steadfast refusal of plea offers, his insistence that the drugs were possessed solely for personal use by him and his girlfriend, and his focus on obtaining a plea offer that did not mandate a prison term, lead the undersigned to conclude that even with more or better advice, Petitioner would have still insisted on going to trial.

### b.  Failures of PCR Counsel

For the reasons discussed hereinabove, the undersigned concludes that Petitioner's claim of ineffective assistance of trial counsel is without merit, and is thus not substantial.  Even if the undersigned could find to the contrary, Petitioner must also "demonstrate[e]…'counsel in the initial-review collateral proceeding, where the claim should have been raised, was ineffective under the standards of *Strickland.*'" *Cook v.*, 688 F.3d at 607 (quoting *Martinez*, 132 S.Ct. at 1318).

After outlining his credentials and efforts on Petitioner's behalf, PCR counsel declares:

> Based upon my investigation and review of the Record, and my conversations with Mr. Kelly, there was no such issue to present. The Record clearly indicated to me that both Mr. Kelly and the Court advised Mr. Price of the benefits of the Plea as offered and of the risks in the event he proceeded to Trial and were convicted. It is (and was) abundantly clear to me that any such contention had (and has) no merit, no factual foundation and, in my opinion, would have been both frivolous and unethical to have presented to any Court.

(Ray Declaration, Doc. 21, Attachment B at 3.)

Here, given the undersigned's evaluation of the merits of the underlying claim of ineffectiveness, the undersigned cannot find that PCR counsel's conclusion that the claim was without merit was unreasonable.


### c.  Conclusion Regarding *Martinez*

Based on the foregoing, the undersigned cannot find that the claim in Ground 4 has substantial merit or that PCR counsel was ineffective in failing to present the claim. Accordingly, Petitioner has failed to show cause for failing to properly exhaust his state remedies on this claim, and therefore is bound by his procedural default.


## 4.  Summary re Cause and Prejudice

Based upon the foregoing, the undersigned concludes that Petitioner has failed to establish cause to excuse his procedural defaults.

Both "cause" and "prejudice" must be shown to excuse a procedural default, although a court need not examine the existence of prejudice if the petitioner fails to establish cause. *Engle v. Isaac*, 456 U.S. 107, 134 n. 43 (1982); *Thomas v. Lewis*, 945 F.2d 1119, 1123 n. 10 (9th Cir.1991).  Petitioner has filed to establish cause for his procedural default.  Accordingly, this Court need not examine the merits of Petitioner's claims or the purported "prejudice" to find an absence of cause and prejudice.

## C.  ACTUAL INNOCENCE AS CAUSE

The standard for "cause and prejudice" is one of discretion intended to be flexible and yielding to exceptional circumstances, to avoid a "miscarriage of justice."  *Hughes v. Idaho State Board of Corrections*, 800 F.2d 905, 909 (9th Cir. 1986).  Accordingly, failure to establish cause may be excused "in an extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent."  *Murray v. Carrier*, 477 U.S. 478, 496 (1986) (emphasis added).  Although not explicitly limited to actual innocence claims, the Supreme Court has not yet recognized a "miscarriage of justice" exception to exhaustion outside of actual innocence.  *See* Hertz & Lieberman, *Federal Habeas Corpus Pract. & Proc.* §26.4 at 1229, n. 6 (4th ed. 2002 Cumm. Supp.).  The Ninth Circuit has expressly limited it to claims of actual innocence.  *Johnson v. Knowles*, 541 F.3d 933, 937 (9th Cir. 2008).

A petitioner asserting his actual innocence of the underlying crime must show "it is more likely than not that no reasonable juror would have convicted him in the light of the new evidence" presented in his habeas petition.  *Schlup v. Delo*, 513 U.S. 298, 327 (1995).  A showing that a reasonable doubt exists in the light of the new evidence is not sufficient.  Rather, the petitioner must show that no reasonable juror would have found the defendant guilty.  *Id*. at 329.

Petitioner fails to make a showing that no reasonable juror would have found him guilty.  Accordingly his procedurally defaulted and procedurally barred claims must be dismissed with prejudice.

### D.  MERITS OF GROUND 1 – PRIOR BAD ACTS

In Ground 1, Petitioner argues that the state admission of other acts evidence was a violation his 14th Amendment rights to due process, Fifth Amendment right under the Compulsory Process Clause, and the right against self-incrimination. (Petition, Doc. 1 at 6.)

The undersigned concludes hereinabove that this claim must be dismissed with prejudice because Petitioner has procedurally defaulted his state remedies on his federal claim.  Respondents address this claim on the merits as an alternative to dismissal as procedurally defaulted, at least with regard to the due process argument which was asserted by Petitioner "in passing."  (Answer, Doc. 9 at 47.)  Because the undersigned finds this claim plainly without merit, the undersigned will address the merits of the due process portion of this claim as an alternative basis for disposing of the claim.

With regard to due process, Petitioner complains that no evidentiary hearing was held or a balancing test applied to determine the unfair prejudice from the evidence, and the evidence was allowed to be presented to the jury.

Respondents argue that the state court properly rejected the related state law claim because the evidence was not irrelevant or unduly prejudicial, not excludable under Ariz. R. Crim. P. 15.8, and that the admission was sufficient evidence of the commission of the act to permit its introduction as a prior bad act.  (Answer, Doc. 9 at 46.)  Respondents further argue that no clearly established Supreme Court precedent precludes the introduction of prior bad act evidence.  Rather, Respondents argue, the Supreme Court declined to address this very issue in *Estelle v. McGuire*, 502 U.S. 62, 75, n.5 (1991).  Further, they argue, the Court has rejected any argument that the Due Process Clause required the exclusion of prejudicial evidence, citing *Spencer v. Texas*, 385 U.S. 554 (1967), etc. (Answer, Doc. 9 at 47-48.)  Finally, they argue, the state law ruling by the Arizona court is not subject to review in this habeas proceeding. (*Id.* at 49.)

**State Law Determination Not Subject to Habeas Review** – As discussed hereinabove with regard to exhaustion and procedural default, the undersigned has

38

concluded that Petitioner did not present his challenge to the prior bad acts evidence as a federal claim.  The state court's determination of the state law claim, even if wrong, is not a basis for relief in this federal habeas court.

This is so for four reasons.  First, this federal habeas court may not determine that the state law decision was wrong.  "We have repeatedly held that a state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus." *Bradshaw v. Richey*, 546 U.S. 74, 76 (2005).

Second, even if the decision was wrong and a violation of state law, it would not entitle Petitioner to relief.  A state prisoner is entitled to habeas relief under 28 U.S.C. § 2254 only if he is held in custody in violation of the Constitution, laws or treaties of the United States.  Federal habeas relief is not available for alleged errors in the interpretation or application of state law.  *Estelle v. McGuire*, 502 U.S. 62 (1991).

Third, it has long been understood that a state may violate its own law without violating the United States Constitution.  *Gryger v. Burke*, 334 U.S. 728, 731 (1948).

> We cannot treat a mere error of state law, if one occurred, as a denial of due process; otherwise, every erroneous decision by a state court on state law would come here as a federal constitutional question.

*Id.* at 731.

Fourth, violations of state law, without more, do not deprive a petitioner of due process.  *Cooks v. Spalding*, 660 F.2d 738, 739 (9th Cir. 1981), cert. denied, 455 U.S. 1026, 102 S.Ct. 1729 (1982).  To qualify for federal habeas relief, an error of state law must be "sufficiently egregious to amount to a denial of equal protection or of due process of law guaranteed by the Fourteenth Amendment." *See Pully v. Harris*, 465 U.S. 37, 41 (1984).  To sustain such a due process claim founded on state law error, Petitioner must show that the state court "error" was "so arbitrary and fundamentally unfair that it violated federal due process." *Jammal v. Van de Kamp*, 926 F.2d 918, 920 (9th Cir. 1991) (quoting *Reiger v. Christensen*, 789 F.2d 1425, 1430 (9th Cir.1986)).  To receive

review of what otherwise amounts to nothing more than an error of state law, a petitioner must argue "not that it is wrong, but that it is so wrong, so surprising, that the error violates principles of due process"; that a state court's decision was "such a gross abuse of discretion" that it was unconstitutional. *Brooks v. Zimmerman*, 712 F.Supp. 496, 498 (W.D.Pa.1989).   Here, Petitioner posits nothing more than what is, at most, a routine error of state law.

**Standard for Evaluating Federal Violations** – The undersigned evaluates Petitioner's due process claim on the assumption, for purposes of this portion of the Report and Recommendation, that Petitioner fairly presented his prior bad acts claim as a federal claim.  If the federal claim was presented, and actually decided by the state court, then that decision would be subject to the limitations in 28 U.S.C. § 2254(d).

While the purpose of a federal habeas proceeding is to search for violations of federal law, not every error justifies relief.  "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the state-court decision applied [the law] incorrectly." *Woodford v. Visciotti*, 537 U. S. 19, 24– 25 (2002) (per curiam).  To justify habeas relief, a state court's decision must be "contrary to, or an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" before relief may be granted.   28 U.S.C. §2254(d)(1).

Federal courts are further authorized to grant habeas relief in cases where the state-court decision "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."[8]  28 U.S.C. § 2254(d)(2).  "Or, to put it conversely, a federal court may not second-guess a state court's fact-finding process unless, after review of the state-court record, it determines that the state court

---

[8] Moreover, a state prisoner is not free to attempt to retry his case in the federal courts by presenting new evidence.  There is a well-established presumption of correctness of state court findings of fact.  This presumption has been codified at 28 U.S.C. § 2254(e)(1), which states that "a determination of a factual issue made by a State court shall be presumed to be correct" and the petitioner has the burden of proof to rebut the presumption by "clear and convincing evidence."

1   was not merely wrong, but actually unreasonable."   *Taylor v. Maddox*, 366 F.3d 992,
2   999 (9th Cir. 2004).

3       On the other hand, the limitations of 28 U.S.C. § 2254(d) only apply where a
4   claim has been "adjudicated on the merits in State court."  Thus, where a petitioner has
5   raised a federal claim to the state courts, but they have not addressed it on its merits, then
6   the federal habeas court must address the claim *de novo*, and the restrictive standards of
7   review in § 2254(d) do not apply.  *Johnson v. Williams*, 133 S.Ct. 1088, 1091-92 (2013).
8   *See id.* (adopting a rebuttable presumption that a federal claim rejected by a state court
9   without being expressly addressed was adjudicated on the merits).

10       Petitioner presents nothing to suggest (again, assuming he actually asserted the
11   federal claim) that the Arizona Court of Appeals did not reject the federal claim on the
12   merits.  Apart from the silence of the Arizona Court of Appeals (which is assumed in the
13   presumption under *Johnson*) the undersigned finds no reason to assume that court did not
14   address the merits of the claim.

15       Consequently, the limitations under 28 U.S.C. § 2254(d) will be applied.

16   **<u>No Due Process Right to Exclude Prior Acts</u>** –   Petitioner argues that he was
17   denied due process because evidence of prior bad acts was admitted.  As argued by
18   Respondents, the Supreme Court has never held that the admission of prior bad acts
19   constitutes a violation of due process. (Answer, Doc. 9 at 48.)  At most, in *Estelle v.*
20   *McGuire*, 502 U.S. 62 (1991) the Court declined to express an "opinion on whether a
21   state law would violate the Due Process Clause if it permitted the use of 'prior crimes'
22   evidence to show propensity to commit a charged crime." *Id.* at 75, n.5.  *See Alberni v.*
23   *McDaniel*, 458 F.3d 860 (9th Cir. 2006) (no clearly established Supreme Court law on
24   propensity evidence violating due process); *Mejia v. Garcia*, 534 F.3d 1036, 1046 (9th
25   Cir. 2008) (same).

26       Thus any holding by the Arizona courts rejecting this due process claim could not
27   be contrary to or an unreasonable application of Supreme Court law.

28   **<u>No Due Process Right Requiring Balancing or Exclusion of Prejudicial</u>**

41

**Evidence** – To the extent that Petitioner might argue that the prior bad act evidence was a violation of due process merely because it was unfairly prejudicial or because the state court failed to make that determination, Petitioner still cannot show any Supreme Court authority supporting such a claim.[9]

In *Alberni*, the Ninth Circuit declined to find the source for a rule precluding prejudicial prior bad act evidence in general notions of due process, concluding that the *Estelle* court's reservation of the issue of the due process question precluded the habeas court from constructing clearly established Supreme Court law on the admissibility of prior bad act evidence from general due process principles.  458 F.3d at 865-866.

Similarly, in the context of assertions of unfair prejudice from evidence of prior bad acts for purposes of proving prior convictions under a repetitive offender statute, the Supreme Court has rejected prejudice as a basis for excluding prior bad acts evidence. *Spencer v. Texas*, 385 U.S. 554 (1967).  There, the Court rejected arguments that "the Due Process Clause of the Fourteenth Amendment requires the exclusion of prejudicial evidence of prior convictions even though limiting instructions are given and even though a valid state purpose—enforcement of the habitual-offender statute—is served." *Id.* at 563.

**No Due Process Right to Separate Hearing** – Finally, Petitioner complains that prior to admitting the prior bad act evidence the state court was obligated to hold a special hearing outside the hearing of the jury to determine if Petitioner committed the prior bad acts.  However, Petitioner points to no Constitutional source for such a requirement, only state law requirements the violation of which, as discussed hereinabove, do not provide a basis for federal habeas relief.[10]

Moreover, here, the trial did address the issue outside the hearing of the jury by

---

[9] This component of Petitioner's argument was never presented to the Arizona Court of Appeals.  That court found: "Price does not contend the evidence was irrelevant or that its probative value was outweighed by its potential prejudicial effect." (Exhibit R, Mem. Dec. at 6-7.)

[10] The Arizona Court of Appeals concluded that state law did not mandate an "evidentiary hearing outside the presence of the jury," only a finding by the court. (Exhibit R, Mem. Dec. at 7.)

conducting a side bar with counsel.  (*See* Exhibit J, R.T. 8/27/10 at 16-23.)  Perhaps Petitioner contends that an evidentiary hearing was required to elicit evidence of his commission of the earlier sales.  However, here, the sole evidence was his confession.  Petitioner posits no reason why his confession was not sufficient to present the matter to the jury.

In the state courts, Petitioner argued that the trial court failed to apply Arizona's requirement for clear and convincing evidence that he committed the prior acts. In *Huddleston v. U.S.*, 485 U.S. 681 (1988), the Court observed that while some circuits required "clear and convincing evidence that the defendant committed the similar act" (e.g. the 7th, 8th, 9th and District of Columbia Circuits), others merely required a preponderance of the evidence, or evidence "sufficient to allow the jury to find that the defendant committed the act."  *Id.* at 685, n.2.  The Court rejected the former and held "that such evidence should be admitted if there is sufficient evidence to support a finding by the jury that the defendant committed the similar act."  *Id.*at 685. Thus, no constitutional requirement for clear and convincing evidence applies.

Petitioner argued in his Motion for Reconsideration to the Arizona Court of Appeals that under the *corpus delicti* rule his confession was not sufficient evidence. (Exhibit S at 4.)  Petitioner does not explicitly raise this argument.  Even so, the rule would not render the evidence insufficient under federal law to permit prior bad acts evidence to go to the jury.  The *corpus delicti* rule generally requires "that a defendant's *confession* requires some independent corroborating evidence in order to serve as the basis for a conviction."  *United States v. Lopez-Alvarez*, 970 F.2d 583, 589 (9th Cir. 1992).  Although the rule is applied in federal courts in federal prosecutions, it has not been held by the Supreme Court a requirement under the Constitution.  *See West v. Johnson*, 92 F.3d 1385, 1393-1394 (5th Cir. 1996) (*corpus delicti* rule not shown to be a constitutional requirement in a sufficiency of the evidence claim); *Evans v. Luebbers*, 371 F.3d 438, 442-443 (8th Cir. 2004) ("no constitutional rights are at stake" in *corpus delicti* argument in sufficiency of evidence claim); *Lopez v. Allison*, 2014 WL 3362228,

at *7 (E.D. Cal. July 8, 2014) (*corpus delicti* rule matter of state law).

**Compulsory Process and Self-Incrimination** – Petitioner makes bald references to violations of the Compulsory Process Clause and the right against self-incrimination. Petitioner fails to proffer any facts to support such claims, or to explain how the asserted facts establish such violations.

"[T]he Compulsory Process Clause guarantees a criminal defendant the right to present relevant and material witnesses in his defense . . . ." *Alcala v. Woodford*, 334 F.3d 862, 879 (9th Cir. 2003).  *See Chambers v. Mississippi*, 410 U.S. 284, 302 (1973); and *Washington v. Texas*, 388 U.S. 14, 17-19 (1967).  Petitioner makes no explanation what witnesses he was precluded from calling.

The Self-Incrimination Clause provides: "No person . . . shall be compelled in any criminal case to be a witness against himself." U. S. Const., Amend. 5. "[T]he core protection afforded by the Self-Incrimination Clause is a prohibition on compelling a criminal defendant to testify against himself at trial.  The Clause cannot be violated by the introduction of non-testimonial evidence obtained as a result of voluntary statements." *United States v. Patane*, 542 U.S. 630, 637 (2004).  Petitioner proffers nothing to show that his statements on the tape were involuntary.

To the extent that Petitioner intends to renew his arguments to the Arizona Court of Appeals that admission of the prior bad act evidence effectively denied his right against self-incrimination, Petitioner fails to point to any Supreme Court law holding that the evidentiary ruling amounted to compulsion.  "The fifth amendment privilege against self-incrimination applies, for example, to prosecution comments on a defendant's failure to testify, and coercive police custodial interrogation, not a defendant's own subjective perception of what constitutes a proper trial strategy." *United States v. Perkins*, 937 F.2d 1397, 1404-05 (9th Cir. 1991) (citations omitted).

**Conclusion** – Petitioner fails to show that the admission of his prior bad acts, in the form of his confession to make drug sales, was a violation of his federal due process rights under Supreme Court law, or a violation of the Compulsory Process Clause or the

right against self-incrimination.   Accordingly, the claim, if deemed not barred as procedurally defaulted, is without merit and must be denied.

### E.  MERITS OF GROUND 2 – *BRADY*

In Ground 2 of the Petition, Petitioner argues that his rights under *Brady* were violated when the state failed to disclose unprofessional conduct by the case agent, although disciplinary actions concerning other detectives were disclosed.   Petitioner argues that the case agent's credibility was already at issue because of misconduct at the crime scene, including destroying property, photos, antiques, etc., and leaving a note "hugs and kisses from the special crimes unit."  (Petition, Doc. 1 at 7.)

In response, Respondents argue that the referenced disciplinary action involved engaging in a sexual act during an investigation at a massage parlor, although unprofessional conduct, was not relevant to his truthfulness and therefore would have been inadmissible under Arizona Rule of Evidence 608(b).  Respondents note that the detective self-reported the conduct, and "took full responsibility for the incident."  As a result, the evidence was not material under *Brady*.  And, even if admissible, there was not a reasonable probability that a different outcome would have resulted given the other overwhelming evidence of Petitioner's guilt, including the quantity of drugs, the baggies, the scale, and the pay/owe sheets, and his own admissions.  Finally, the state court's decision was not an unreasonable application of clearly established federal law. (Answer, Doc. 9 at 53-56.)

Petitioner does not address this claim in his Reply (Doc. 10).

In rejecting this claim in Petitioner's PCR proceeding, the Arizona Court of Appeals referenced the standards applicable under *Brady,* including the recent restatements under *Cone v. Bell*, 556 U.S. 449 (2009) and *Smith v. Cain*, - - - U.S. - - - , 132 S.Ct. 627 (2012).  (Exhibit GG, Mem. Dec. at 3.)   The court concluded that Petitioner had not shown that the evidence "could have altered the verdict" because the testimony of the detective was not critical to his conviction, Petitioner had admitted his

guilt during his recorded interview, and the evidence was "of marginal impeachment value because it does not impugn the detective's character for truthfulness." (*Id.* at 4.)

**_Brady_ Standards** -    In *Brady*, the Supreme Court held that a defendant's due process rights are violated when the state fails to disclose to the defendant prior to trial "evidence favorable to an accused . . . where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." 373 U.S. at 87. As the Supreme Court has observed, *Brady* and its progeny "illustrate the special role played by the American prosecutor in the search for truth in criminal trials." *Strickler v. Greene*, 527 U.S. 263, 281 (1999).

To be sure, not every violation of the duty to disclose constitutes a *Brady* violation. In *Strickler*, the Supreme Court reminded us that "there is never a real *Brady* violation unless the nondisclosure was so serious that there is a reasonable probability that the suppressed evidence would have produced a different verdict." 527 U.S. at 281 (internal quotation marks omitted). A "true" *Brady* violation therefore occurs only where the State suppressed the evidence, either willfully or inadvertently; the evidence at issue was favorable to the accused, because it is either exculpatory or impeachment material; and the evidence was material to the outcome such that the defendant the defendant was prejudiced by the suppression. *Id.* at 281-82.

Thus, a failure of the prosecutor to disclose evidence to the defense is a due process violation, only if three conditions are met: "The evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; that evidence must have been suppressed by the State, either willfully or inadvertently; and prejudice must have ensued." *Strickler*, 527 U.S. at 281-282.

In *Cone*, the Court referenced the restatement of the prejudice standard from its decision in *Kyles v. Whitley*, 514 U.S. 419 (1995):  "In other words, favorable evidence is subject to constitutionally mandated disclosure when it 'could reasonably be taken to put the whole case in such a different light as to undermine confidence in the verdict.' " *Cone*, 556 U.S. at 470 (quoting *Kyles*, 514 U.S. at 435).   *See also Smith v. Cain*, 132

46

S.Ct. 627, 630 (2012).

**Admissibility** – Respondents argue that the proffered evidence would not have been admissible under Arizona Rule of Evidence 608(b) because it would not have shown the detective's "character for truthfulness."  The Arizona Court of Appeals concluded that the evidence did "not impugn the detective's character for truthfulness – he immediately self-reported the incident and there is no suggestion in the record that he omitted any facts or otherwise concealed the truth of his conduct. *See* Ariz. R. Evid. 608(b)."  (Exhibit GG, Mem. Dec. at 4.)  The court did not, however, conclude that the evidence was inadmissible.

Moreover, Rule 608(b) is not the only avenue for exploiting the detective's misconduct.

Rule 608(b) governs only the introduction of "extrinsic evidence."  "It is well settled that when impeaching a witness regarding an inconsistent fact collateral to the trial issues, the impeaching party is bound by the witness' answer and cannot produce extrinsic evidence to contradict the witness."  *State v. Hill*, 174 Ariz. 313, 325, 848 P.2d 1375, 1387 (1993) (citing Ariz. R. Evid. 608(b)).  Thus, Petitioner could have, notwithstanding Rule 608(b), sought to impeach the detective by cross-examining him on the issue, without introducing extrinsic evidence.

> The rule does not limit cross-examination. During cross-examination, the questioner may attempt to challenge virtually any aspect of the witness's direct testimony. An error in any facet of the direct examination can reflect adversely on the witness's perceptual ability, memory, narrative ability, or sincerity; and all those factors are relevant to the jury's assessment of the witness's credibility. Subject to the trial judge's discretionary control under Rule 403, the cross-examiner can question about these factors to her heart's content. Moreover, even if the witness initially gives the cross-examiner an unfavorable answer, the questioner may apply pressure during cross by, for example, reminding the witness of the penalties for perjury…. What then is the procedural significance of the rule? The core prohibition applies when the witness to be impeached has already left the stand and the former cross-examiner later calls a second witness or proffers an exhibit to impeach the earlier witness's credibility.

1 McCormick On Evid. § 49 (7th ed.).  *Cf. United States v. Varelli*, 407 F.2d 735, 751

(7th Cir. 1969) (The restrictions on extrinsic evidence for impeachment "does not apply to 'The extraction of the facts of misconduct from the witness himself upon cross-examination,' 3 *Wigmore on Evidence*, § 981 at 547 (3rd Ed. 1940), subject to the exceptions for relevancy and self-incrimination.").

Second, Rule 608(b) only governs the introduction of evidence "to attack or support the witness's character for truthfulness."   It does not preclude evidence introduced for another purposes, *e.g.*  to establish bias or prejudice, identity, motive, etc. *See* 1 *Ariz. Prac., Law of Evidence* § 608:6 (4th ed.) (citing *United States v. Abel*, 469 U.S. 45 (1984). *Cf. Abel*, 469 U.S. at 470-471 (finding Fed. R. Evid. 608(b) no bar to admission of extrinsic evidence of bias).

**Suppression** – Respondents do not contend that the material was not suppressed. The Arizona Court of Appeals made no finding on the issue.   Thus, the undersigned concludes that the evidence was suppressed.

**Impeachment** – Petitioner makes no contention that the evidence was exculpatory.  Indeed, it appears unrelated to Petitioner or his conduct in this prosecution. Thus, to qualify as *Brady* material, the evidence must have been impeaching.

It is undisputed that the detective was not only truthful about his misconduct when called upon it, but that he self-reported the conduct.  (Exhibit GG, Mem. Dec. at 4.)  Indeed, the suspension notice issued to the detective reflects that he had been directed to engage in an undercover investigation of the massage parlor, and to allow himself to be "solicited for sexual favors by the women inside," and that his report on the investigation included the revelation that he "was involved in the commencement of a sexual act" with one of the prostitutes.  (Exhibit Y, PCR Pet. at Exhibit D, Statement of Facts.)   Petitioner proffers no explanation how the evidence would have been impeaching of the detective with regards to his truthfulness.   To the contrary, it suggested that the detective was truthful.

Here, however, PCR counsel attempted to argue bias by conjuring up visions of a rogue officer, behaving unprofessionally with a willingness to break the rules to obtain

48

1   convictions.  Indeed, as pointed out by PCR counsel, defense counsel cross-examined the

2   detective on his unprofessional conduct during the search of Petitioner's home, *e.g.*

3   breaking dishes, tearing up photographs, etc.  (*See* Exhibit DD, Pet. Rev. at 3-4.)

4          Thus, the undersigned concludes that the evidence was impeaching, to the extent

5   that it showed bias.  The Arizona Court of Appeals, which focused instead on the

6   prejudice requirement, did not conclude to the contrary.

7          **Prejudice** – Petitioner fails, however, to show the requisite prejudice from the

8   lack of this evidence.

9          Even when viewed for its potential for showing bias, the evidence has limited

10  value.  The disciplinary hearing documentaiton reflects that on appeal, the detective's

11  discipline was reduced on the basis that the conduct was partially attributed to the fact

12  that the detective "has not received any formal VICE training" and "there were

13  discrepancies in actual understanding of instruction during initial briefing."  (Exhibit Y,

14  PCR Pet. at Exhibit D, Statement of Facts.)  Thus, it shows less a rogue, biased officer

15  than an untrained one, so unclear about how far he was required to progress in an

16  investigation of prostitution to show the suspect's willingness to engage in the exchange,

17  that he voluntarily disclosed his misconduct as part of his investigative report.

18         Moreover, as observed by the Arizona Court of Appeals, Petitioner "has not

19  identified any testimony by the detective that was critical to his conviction."  (Exhibit

20  GG, Mem. Dec. at 4.)  "Price admitted his guilt during a recorded interview with police

21  that was played for the jury. Although Price claimed at trial that he had lied during the

22  interview about selling drugs, he does not explain how the detective's testimony is

23  material to the jury's evaluation of his credibility on that issue."  (*Id.*)  For example,

24  Petitioner does not suggest that the detective coerced him into confessing, or engaged in

25  some other misconduct in conducting the interview.

26         At trial, counsel argued to the trial judge that the statement was given because

27  Petitioner was acting from paranoia, the combined result of his methamphetamine use,

28  the "shock-and-awe entry by a S.W.A.T. Team; the destruction of personal property;

hearing his fiancée screaming, knowing she was pregnant; isolated in the bathroom with [the case agent], in the presence of [another officer, SR], who is the ex-husband of one of his live-in girlfriends." (Exhibit K, R.T. 9/1/10 at 15.) Petitioner testified that he "was under the impression, from what I had been told by [the case agent and SR] that it would be favorable or beneficial for me to tell them everything and to cooperate." (*Id.* at 34.) He testified that he "felt a lot of pressure; I felt intimidated, embarrassed." (*Id.* at 37.) On cross examination, however, Petitioner testified that the interview "at one point in time, it got a little heated," but conceded that he was not physically accosted, there were no guns pointed at him, and he was trying to be truthful and cooperative "[f]or the most part." (*Id.* at 75-76.) Petitioner also conceded that the "breaking" he heard was "[f]or the most part" during the entry into the home (*id.* at 64), and denied seeing a chair thrown into the yard (*id.* at 33). In short, Petitioner points to no misconduct by the detective to explain away his admissions to selling drugs.

Moreover, the evidence against Petitioner, even without his admission, was substantial. It included his admission at trial to the use of drugs, and purchasing drugs with pooled funds from his friends, and his possession at the time of his arrest of the drugs, a scale, baggies, and a ledger of his friends, drug amounts, and dollar amounts.

On that record, the undersigned cannot find that the Arizona Court of Appeals' determination that there was no prejudice was contrary to or an unreasonable application of federal law, nor that it was an unreasonable determination of the facts.

Accordingly, Ground 2 is without merit and must be denied.


## F.  MERITS OF GROUND 3 – INEFFECTIVNESS RE *BRADY* MATERIAL

In his Ground 3, Petitioner argues that trial counsel was ineffective for failing to adequately investigate and obtain the impeachment evidence from the disciplinary proceeding underlying Petitioner's *Brady* claim. (Petition, Doc. 1 at 8.)

Respondents argue that the information was not *Brady* material and could not have been used to impeach the case agent and thus the failure to discover the information

50

could not have prejudiced Petitioner, and even if admissible, its absence did not prejudice Petitioner.  (Answer, Doc. 9 at 56-57.)

Petitioner does not reply.  (*See generally* Reply, Doc. 10.)

**State Court Decision** – In rejecting this claim in Petitioner's PCR proceeding, the Arizona Court of Appeals concluded that Petitioner's failure to show prejudice from the absence of the disciplinary evidence required rejection of his claim of ineffective assistance of counsel under the standard in *Strickland*. (Exhibit GG, Mem. Dec. at 5.) That court also concluded, however, that Petitioner had failed to show that counsel performed deficiently, based upon the absence of something to suggest that counsel should have known to make a request for the disciplinary records, or that such requests are made as a matter of course.

***Strickland* Standard** – As discussed hereinabove in connection with Petitioner's assertions of cause and prejudice, claims of ineffective assistance of counsel are analyzed pursuant to *Strickland v. Washington*, 466 U.S. 668 (1984).  In order to prevail on such a claim, Petitioner must show:   (1) deficient performance - counsel's representation fell below the objective standard for reasonableness; and (2) prejudice - there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Id.* at  687-88.  Although the petitioner must prove both elements, a court may reject his claim upon finding either that counsel's performance was reasonable or that the claimed error was not prejudicial.  *Id.* at 697.

A failure to investigate a meritorious defense may constitute ineffective assistance of counsel.  *See Hill v. Lockhart*, 474 U.S. 52, 59 (1985); and *Morris v. California*, 966 F.2d 448 (9th Cir. 1991), *cert. denied*, 113 S. Ct. 96 (1992).  "[C]ounsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary. In any ineffectiveness case, a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments."  *Strickland*, 466 U.S. at 691.

**Deficient Performance** – The undersigned cannot conclude, based on the record and arguments before this Court, that trial counsel did not perform deficiently in failing to investigate the case agent's disciplinary record.

The undersigned rejects hereinabove, in connection with Petitioner's *Brady* claim in Ground 2, the argument that the detective's disciplinary record was not admissible. Moreover, the fact that the material did not qualify as *Brady* material is not controlling. Defense counsel does not merely function as quality control on the prosecution's *Brady* disclosures, but has an obligation to undertake reasonable investigation of the charges and defenses, and such a reasonable investigation must often extend beyond material in the prosecutor's file.

Nor is the undersigned convinced that Petitioner was obligated to produce evidence that counsel should have known to request the detective's disciplinary record or that counsel regularly did so.  There were essentially no witnesses other than the involved officers. Investigating the background and sources for impeachment of prosecution witnesses is commonly a core function of preparing a defense.

On the other hand, Petitioner proffers nothing to show that trial counsel did not investigate the matter.  At best, Petitioner presents an affidavit from trial counsel that "[i]f the information had been disclosed, I would have attempted to use the information to impeach the credibility of [the case agent] during his testimony."  (Exhibit Y, PCR Pet. at Exhibit H at ¶ 8.)

Because it does not affect the outcome, the undersigned presumes, for purposes of this Report & Recommendation, that trial counsel performed deficiently by failing to investigate these materials.

**Prejudice** –  Even if counsel is presumed to have performed deficiently, a reviewing court would still have to determine whether, had counsel investigated and discovered the material, "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the

outcome." *Strickland*, 466 U.S. at 694.  That is at least a rough equivalent of the standard for finding prejudice in a *Brady* claim, *i.e.* whether the evidence " 'could reasonably be taken to put the whole case in such a different light as to undermine confidence in the verdict.'"  *Cone*, 556 U.S. at 470 (quoting *Kyles*, 514 U.S. at 435). And, for the reasons discussed hereinabove in connection with Ground 2, the undersigned has already concluded that Petitioner has failed to meet that standard.  For the same reasons, the undersigned concludes that Petitioner has failed to show prejudice from any failure of counsel to pursue of the disciplinary materials.

Accordingly, Petitioner's Ground 3 is without merit and must be denied.


## G.  SUMMARY

The undersigned has concluded that Petitioner has procedurally defaulted his state remedies on Grounds 1 (Prior Bad Acts) and 4 (Ineffective Assistance re Plea Offer). With regard to Ground 1, Petitioner proffers no cause to excuse the procedural default, and this claim must be dismissed with prejudice. With regard to Ground 4, Petitioner has proffered the ineffective assistance of PCR counsel as cause to excuse his procedural default.  The undersigned finds the underlying claim in Ground 4 to not be of substantial merit, and that PCR counsel was not ineffective in failing to pursue it.  Thus, Petitioner's procedural defaults may not be excused for cause.  Further, Petitioner makes no showing of actual innocence.  Accordingly, Grounds 1 and 4 must be dismissed with prejudice.

The undersigned has concluded that Grounds 2 (*Brady*) and 3 (Ineffectiveness re *Brady*) were properly exhausted, but are without merit.  Accordingly, these grounds must be denied.

In the alternative to dismissal as procedurally defaulted, the undersigned has concluded that Ground 1 (Prior Bad Acts) is without merit, and should be denied if not dismissed.

//

//

53

## IV.  CERTIFICATE OF APPEALABILITY

**Ruling Required** - Rule 11(a), Rules Governing Section 2254 Cases, requires that in habeas cases the "district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant."  Such certificates are required in cases concerning detention arising "out of process issued by a State court", or in a proceeding under 28 U.S.C. § 2255 attacking a federal criminal judgment or sentence. 28 U.S.C. § 2253(c)(1).

Here, the Petition is brought pursuant to 28 U.S.C. § 2254, and challenges detention pursuant to a State court judgment.  The recommendations if accepted will result in Petitioner's Petition being resolved adversely to Petitioner.  Accordingly, a decision on a certificate of appealability is required.

**Applicable Standards** - The standard for issuing a certificate of appealability ("COA") is whether the applicant has "made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2).  "Where a district court has rejected the constitutional claims on the merits, the showing required to satisfy § 2253(c) is straightforward: The petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong."  *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).  "When the district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claim, a COA should issue when the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Id.*

**Standard Not Met** - Assuming the recommendations herein are followed in the district court's judgment, that decision will be in part on procedural grounds, and in part on the merits. Under the reasoning set forth herein, jurist of reason would not find the correctness of the procedural rulings debatable, and the constitutional claims addressed on their merits are plainly without merit.

Accordingly, to the extent that the Court adopts this Report & Recommendation as to the Petition, a certificate of appealability should be denied.

## V.  RECOMMENDATION

**IT IS THEREFORE RECOMMENDED** that Grounds 1 and 4 of the Petitioner's Petition for Writ of Habeas Corpus, filed November 7, 2014 (Doc.  1) be **DISMISSED WITH PREJUDICE**.

**IT IS FURTHER RECOMMENDED** that, in the alternative, Ground 1 be of the Petition (Doc. 1) be **DENIED**.

**IT IS FURTHER ORDERED** that the remainder of the Petition (Doc. 1) be **DENIED**, and this case **DISMISSED WITH PREJUDICE**.

**IT IS FURTHER RECOMMENDED** that, to the extent the foregoing findings and recommendations are adopted in the District Court's order, a Certificate of Appealability be **DENIED**.

## VI. EFFECT OF RECOMMENDATION

This recommendation is not an order that is immediately appealable to the Ninth Circuit Court of Appeals.  Any notice of appeal pursuant to *Rule 4(a)(1), Federal Rules of Appellate Procedure*, should not be filed until entry of the district court's judgment.

However, pursuant to *Rule 72(b), Federal Rules of Civil Procedure,* the parties shall have fourteen (14) days from the date of service of a copy of this recommendation within which to file specific written objections with the Court.  *See also* Rule 8(b), Rules Governing Section 2254 Proceedings.  Thereafter, the parties have fourteen (14) days within which to file a response to the objections.  Failure to timely file objections to any findings or recommendations of the Magistrate Judge will be considered a waiver of a party's right to *de novo* consideration of the issues,  *see United States v. Reyna-Tapia*, 328 F.3d 1114, 1121 (9th Cir. 2003)(*en banc*),  and will constitute a waiver of a party's right to appellate review of the findings of fact in an order or judgment entered pursuant

to the recommendation of the Magistrate Judge, *Robbins v. Carey*, 481 F.3d 1143, 1146-47 (9th Cir. 2007).

Dated: September 11, 2015

14-8219r RR 15 03 23 on HC.docx

James F. Metcalf
United States Magistrate Judge

56